# CHARLESTON.

MICHAEL HOAR *et al* v. COUNTY COURT OF LEWIS COUNTY *et al.*

Submitted September 28, 1920.   Decided October 5, 1920.

1. HIGHWAYS—*Viewers for Establishment or Alteration of County Road Should be Fair, and Disinterested.*

   In the selection of viewers, appointed in compliance with the provisions of section 56-*a* (20), chapter 43, Code 1916, to investigate and report to the county court with respect to the advisability of a proposal to establish or alter a county road, it is important that those selected to serve be fair and impartial persons, having no direct personal or pecuniary interest in the outcome of the investigation. (p. 96).

2. SAME—*Owner of Adjacent Land is Disqualified as Viewer in Establishing County Road.*

   A person who owns land, along or over which it is proposed to establish the road, has such a direct personal and financial interest in the result of the investigation as disqualifies him to serve in the capacity of viewer. (p. 96).

3. SAME—*Participation of Disqualified Viewers Renders Proceeding Voidable.*

   Where one or more of the viewers appointed for such purpose is thus disqualified, his participation in the investigation and report renders the proceeding voidable, not void. (p. 96).

4. SAME—*Proceeding to Establish May be Set Aside, to Permit Appointment of Qualified Viewers.*

   Upon proper application, speedily made, before the appropriate tribunal, such proceeding may be set aside and annulled to permit the appointment of viewers having the necessary qualifications. (p. 97).

5.   SAME—*Disqualification of Viewers in Proceeding to Establish
     County Road Held Waived.*

     But where one entitled to object knows of the appointment
of such disqualified person, or properly may be charged with
such knowledge, but fails for an unreasonable period of time
to protest or institute proceedings to compel the appoint-
ment of a qualified board of viewers, he will be deemed to
have waived the irregularity, in the absence of proof show-
ing injury to the rights of the public.   (p. 98).

6.   SAME—*Courts Will Not Ordinarily Interfere With Discretion
     in Establishment of Roads.*

     The Legislature having committed to county courts broad
discretionary power with respect to the establishment and re-
location of public roads, courts ordinarily do not interfere
with the exercise thereof, except in extraordinary cases.
(p. 98).

(WILLIAMS, PRESIDENT, absent.)

Appeal from Circuit Court, Lewis County.

Suit for injunction by Michael Hoar and others against the
County Court of Lewis County and others.   From a decree dis-
missing the cause, and dissolving an injunction theretofore
awarded, plaintiffs appeal.

*Affirmed.*

*Edward A. Brannon* and *Herbert M. Blair,* for appellants.
*Chas P. Swint,* for appellees.

LYNCH, JUDGE:

This appeal by plaintiffs below requires a review of a decree
dismissing the cause, duly developed by pleadings and proof
taken by each of the parties, and dissolving the injunction there-
tofore awarded by the judge of the circuit court of Lewis County
in chambers.   The object of the writ was to inhibit, until the
further order of the court or judge, the progress of the construc-
tion work then in the course of performance by and under the
immediate supervision of J. V. McCudden, the agent of the
county court, appointed for the purpose, upon the public road of
the county generally known by the name as the Loveberry road,
at least it is so called in the record.   The work ordered to be
done and then being performed was not upon the original or
former location, but upon a changed or altered location se-

lected and authorized by the county court in 1916, pursuant to the requirements of chapter 43 of the 1916 Code, and hence not by virtue of the present road law, chapter 66, Acts 1917, chapter 43, Code 1918.

There was and still is a general consensus of opinion among residents living in the immediate vicinity favorable to the relocation of the road so as to remove the traveled bed thereof out of Loveberry run and place it on solid ground on one side or the other; but as to which of the two locations affords the greater accommodation to the people of the community and is the more accessible and less expensive to build and maintain there is a wide difference of opinion among witnesses, each location having its adherents and advocates, and as to each of which the record is encumbered with much testimony.

The main contention, the real gist of the controversy, is the personnel of the committee of viewers appointed to examine the road and report upon the feasibility, necessity and expensiveness of the improvement in comparison with other alleged available routes, as required by section 56a(20), ch. 43, Code 1916. The specific objection challenges the appointment of P. F. Gillooly and J. V. McCudden as two of the three viewers, the basis being Gillooly's ownership of one of the tracts of land traversed by the road as relocated and McCudden's joint interest with others in an adjoining tract acquired by inheritance through his father, likewise traversed by the relocated road. Gillooly and McCudden were active in procuring the alteration, but so were other owners of land in the same locality, including plaintiffs. Besides, the members of the court also personally viewed, examined and investigated the situation of the road and the proposed relocation, after the viewers made their report, and the court approved and adopted it. For the same reason the challenge also questions the propriety of McCudden's appointment as the representative and agent of the court to supervise the improvement, employ the labor and procure the equipment necessary to perform the work. Their character, fitness and integrity are not assailed, though McCudden's competency as road builder is made an issue by the pleadings, and proof is offered for

and against his possession of the requisite ability and experience in that particular.

The persons named were appointed by the court on two different occasions to serve as viewers, but upon the objection of plaintiffs made to the first appointment because of their real estate interests, the court substituted in their stead John Hannigan and Peter Flesher, both of whom subsequently declined, refused, or for cause failed to serve in that capacity; whereupon the court, without notice to the objectors, reappointed Gillooly and McCudden, who with W. K. Spaur, county road engineer, entered upon the discharge of the duties devolved upon them by virtue of the last appointment.

It is undoubtedly important that fair, impartial and disinterested viewers should be selected and appointed to examine the routes proposed and report concerning them to the county court or other like tribunal having the power to act in that behalf, This proposition is so eminently just that the mere statement shows its reasonableness. No man should sit in judgment upon the merits of a controversy in which he has a direct personal or financial interest. In speaking of a closely analogous question relating to the appointment of tribunals to assess the benefits and damages resulting from the opening of a new road, Elliott in his work on Roads & Streets (3d Ed.) vol. 1, § 321, says: "If one of the persons selected is directly interested in the opening of the proposed street or road, he should be deemed disqualified on the elementary principle that no man can be a judge in his own case." See also *State v. Crane*, 36 N. J. L. 394. A person, therefore, who owns land along or over which it is proposed to establish a road for public use has such a direct personal and financial interest as disqualifies him to serve in such capacity. *State v. Conover*, 7 N. J. L. 245; *Van Gilder v. Board of Chosen Freeholders*, 83 N. J. L. 139; *Kieckenapp v. Supervisors*, 64 Minn. 547; 37 Cyc. 85. But the disqualification does not necessarily render the proceedings wholly void. They are merely voidable, and upon proper application, speedily made, before the appropriate tribunal, may be set aside and annulled, and a new body appointed against which no reasonable objection can successfully be urged. *Kieckenapp v.*

*Supervisors, supra; State* v. *Crane,* 36 N. J. L. 394; *Foot* v. *Stiles,* 57 N. Y. 399.

But to avail as ground for relief in equity from the consequences of the voidable act, reasonably speedy application therefor ordinarily is required. This rule is not inapplicable here, provided plaintiffs knew, or had access to the source of information which, if pursued, would have informed them, what the court had done towards the relocation and establishment of the road. In 1 Elliott, Roads & Streets (3d Ed.) § 322, the author, speaking of the waiver of objections to the competency of appraisers appointed for the assessment of benefits and damages in condemnation proceedings, says: "One who, with knowledge of the facts constituting a disqualification, has a lawful opportunity to object must avail himself of the opportunity, or he will be deemed to have waived objections to the competency of commissioners or appraisers. It is, however, essential that the party should have notice of the disqualification or be chargeable with notice." See also *Supervisors* v. *Stout,* 9 W. Va. 703.

That the means of knowing of the appointment of viewers were available to plaintiffs there is no reason to doubt. The record of the county court was open for their inspection. It showed the appointment of Gillooly and McCudden April 4, 1916, the annulment of the appointing order April 5, 1916, and the appointment of Hannigan and Flesher on the same day. Of these two orders they had absolute knowledge, because they were the active agents in procuring the annulment of the first and the entry of the second. And although Gillooly and McCudden were reappointed June 15, 1916, upon the failure of the other appointees to serve, plaintiffs remained silent and made no move whatever looking to the removal of the same appointees until they brought this suit early in September, 1917, the date of the verification of the bill being the 6th, and of the injunction the 8th, of the same month. Moreover, they were cognizant of the constant agitation and propaganda in the community for the change in the road location and the necessity therefor. They doubtless were aware of the filing, on September 1, 1916, of the report by the viewers appointed by the or-

·der of June 15th, and from it could have ascertained who the appointees were. Having actual knowledge of the existence of some of these facts and opportunity to know the others, they did not in their bill elect to say when they first ascertained what the court had done in the meantime to prejudice their rights, and alleged in the bill as regards their want of knowledge only that they were unaware· of the reappointment of the same persons as viewers of the road. When they became aware of that fact they do not say.

The exact allegation of the bill, so far as it discloses their knowledge, is: "Following the entry of said order of April 5, 1916, they rested in the belief that said county court would in good faith have said view made by said viewers so last appointed, or some other disinterested and qualified persons, if for any reason said viewers last appointed should fail or refuse to act, but plaintiffs here allege that without notice to plaintiffs, and wholly without their knowledge, said county court for some reason inexplainable, save on the theory that it desired to favor and prefer said P. F. Gillooly and James V. McCudden, by order entered on June 5 (15), 1916, revoked its said order of April 5, 1916, and * * * immediately again reappointed said W. K. Spaur and James V. McCudden and P. F. Gillooly as viewers, * * * (who) thereafter, without notice to plaintiffs, and so far as plaintiffs are aware without notice to any other residents or freeholders in that neighborhood, * * * went upon the lands * * * and marked out certain changes in said Loveberry road, * * * very beneficial and advantageous to said Gillooly and McCudden, but disadvantageous and prejudicial to the public interest," etc; without showing any facts and circumstances warranting such conclusion, and leaving to inference the date when they acquired information concerning the last appointment of viewers. But according to the admission of the plaintiff Dolan, he learned from a county court news item, published in the Weston Democrat the same week the substitution was made, that Gillooly and McCudden had been substituted for Hannigan and Flesher. And because of the intimacy of Dolan and Hoar, it is not unfair to

assume that the knowledge of one promptly was communicated to the other.

Whether plaintiff Hoar had or did not have all the information possessed by Dolan, he certainly was fully aware of the demand and agitation among his neighbors and friends for the improvement, who likewise were interested, more or less, in its promotion, and that about the middle of May, 1917, the commissioners composing the county court had earlier in the same month viewed and examined the road as theretofore relocated by the viewers appointed for the purpose, the plaintiffs having urged upon them the necessity of a personal investigation during the fall of 1916. And it may readily be inferred from other facts proved that Hoar had actual personal knowledge of other material incidents pertaining to the relocation and the second appointment of Gillooly and McCudden, especially when considered in connection with the admission of plaintiff Dolan that he had actual knowledge thereof less than one week after it was made. Although so advised and informed during the summer or fall of 1916, they did nothing by way of challenging the qualification of the appointees, because of interest, until September, 1917, and then only by a bill for an injunction to stay the further prosecution of the improvement after the work was begun and in the early stages of its advancement towards completion. Application for this relief we think came too late.

Though alleged in the bill, no proof overcomes the denial of the answer to the effect that the road alteration was not wrongful or personally prejudicial. Mere inference of irregularity chargeable to pecuniary or possessory right or ulterior motives, is not a safe or reliable ground for condemning the work of road viewers. They acted only in an advisory capacity. There was no finality in what they did preclusive of county court action or the right of the court to withhold confirmation. They did not claim or assess damages for the land appropriated from their farms. On the contrary, they voluntarily dedicated it to the public for highway construction. The only claim was for "enough money to build two strings of fence along the road to inclose their places," and McCudden's requirement for a

"cattle pass" in the hollow between certain stations· along the road, and $2.00 per diem for their services.

The alleged misconception of the demands and necessities for the betterment of the road condition on the land of defendants· and of its extension into other localities as part of a general improvement plan, and for a like accommodation of the public at large as distinguished from the residents of the immediate community particularly affected, is another ground of complaint.    It is to these phases of the issues presented for decision that the bulk of the testimony is directed. · Which location, the one approved by the viewers and adopted by· the county court, or the one on the opposite side of the run, will best serve and promote the convenience of, and afford the greatest accommodation to, ·the most people, and require the least expenditure of public funds to construct and ·maintain without serious damage or inconvenience to landowners, are subjects uppermost in the minds of the parties and their adherents.    But respecting these questions it is only necessary to remark that they are solely to be answered finally and always by the county court.    To it and to it alone the legislature committed the discretion and judgment deemed requisite for dealing with the establishment, alteration and maintenance of public highways. With the exercise of the right to deliberate upon and finally settle these important and vital questions courts ordinarily possess no jurisdictional power to interfere, except in extraordinary cases.  *State* v. *County Court,* 33 W. Va. 589; *County Court* v. *Boreman,* 34 W. Va. 87, 92; *County Court* v. *Hall,* 51 W. Va. 269, 274, and many other decisions of this court to the ·same effect.

Plaintiffs also rest their claim to relief upon the alleged failure of the county court to observe the requirement for personal service or publication of notice of its intention to alter the road location, and cite as a basis for this contention sections 56-*a* (20·) of chapter 43, Code 1916, and 75 of chapter 43, ·Code 1918, as to which there is a marked similarity as regards notice and the manner of· giving it.   By these sections is manifested the legislative intent to limit service of such notice to those property owners and tenants whose land is to be

taken or injured in the establishment or alteration of roads. There is no design indicated for a general service of notices to persons not within that limitation. No language could well be more definite. General notice of the intended alteration was duly published as required by these sections, and more particularly by section 56-a (17), ch. 43, Code 1916, and section 68, ch. 43, Code 1918.

Finally complaint is made of the failure to give notice by publication to road building contractors for the purpose of obtaining bids for the work to be done on the new road, as authorized by sections 56a (16), ch. 43, Code 1916, and 88 of chapter 43, Code 1918. But each of these sections authorizes county courts to construct and repair roads in any other manner they may deem advisable, notwithstanding the requirement for bid advertisement. Wherefore this complaint also is not well founded.

Finding in the record no error, and deeming other assignments and motions made immaterial and inconsequential, we affirm the decree complained of.

*Affirmed.*