# WHEELING.

## COUNTY COURT v. BOREMAN, JUDGE.

Submitted June 14, 1890.—Decided June 25, 1890.

| | |
|---|---|
| 34 | 87 |
| 34 | 327 |
| 34 | 87 |
| 35 | 613 |
| 34 | 87 |
| 38 | 79 |
| 34 | 87 |
| 39 | 406 |
| 34 | 87 |
| e54 | 78 |
| 34 | 87 |
| 55 | 510 |
| 34 | 87 |
| 56 | 144 |
| 34 | 87 |
| 58 | 320 |
| e58 | 501 |
| 58 | 656 |
| 34 | 87 |
| e 60 | 404 |
| 34 | 87 |
| f64 | 447 |
| f65 | 192 |

1. BRIDGES—COUNTY COURT—NOTICE.

Since section 35 of chapter 43 of the Code of 1868 has been amended and re-enacted, so as to read as it now stands in Code 1887, p. 326, the alteration by the County Court of an existing county road, turnpike or bridge, in order to place the same on better ground or grade, does not render it necessary to give the notice to the public which (as was decided in *Conrad* v. *Lewis Co.,* 10 W. Va. 784) was formerly required by section 30 of chapter 43 of the Code.

2. BRIDGES—COUNTY COURT—CERTIORARI.

Private citizens, who have no special property or interest to be affected, acting on their own behalf and that of other citizens who have not made themselves litigants, nor submitted any motion, nor taken any exceptions before the County Court, when the latter is conducting proceedings to alter the location of and rebuild a county bridge, can not review the action of said County Court by *certiorari,* and a judge of the Circuit Court has no jurisdiction or authority to issue any such writ in such a case.

3. BRIDGES—COUNTY COURT—PROHIBITION.

Prohibition lies against such usurpation of power by the judge of the Circuit Court, and under the circumstances and necessities of this case it is the only appropriate and adequate remedy.

*Van Winkle & Ambler* and *J. B. Jackson* for petitioners cited:

Code c. 42 § 20; 13 W. Va. 504, 505; 10 W. Va. 788, 789; 11 S. E. Rep. 8, 10; 119 Ind. 444; 26 W. Va. 81; Code c. 39 § 47; 25 W. Va. 614; Code c. 110 § 2; 24 W. Va. 522; 15 W. Va. 483; 11 S. E. Rep. 72; Code c. 43 § 25; 20 Gratt. 484; Code c. 43 § 30; 4 Call 374; 10 W. Va. 180; 13 W. Va. 358; 32 W. Va. 3; 15 W. Va. 500; Code c. 110 § 1; 21 W. Va. 134, 140; 25 W. Va. 221; 24 W. Va. 362; 28 W. Va. 324; 31 W. Va. 609.

*J. M. Jackson* and *J. G. McCluer* for respondents cited: 25 W. Va. 609–616; 19 W. Va. 84, 85; 29 W. Va. 64,

65 ; 23 W. Va. 207 ; 25 W. Va. 558 ; 2 S. E. Rep. 73 ; 21
W. Va. 140 ; 28 W. Va. 327 ; 7 W. Va. 92, 104, 106 ; Code
c. 135 § 1 ; 27 W. Va. 271 ; 3 W. Va. 84 ; 11 S. E. Rep.
75 ; Code c. 110 § 1 ; High Extra. Rem. § § 156, 243 ; 48
Mo. 112 ; 27 Gratt. 329 ; 10 W. Va. 784 ; Code c. 39 § 47 ;
Code c. 112 § 14 ; Code c. 135 § 1 ; 3 W. Va. 84.

LUCAS, JUDGE : .

At the city of Parkersburg the Little Kanawha river
above its confluence with the Ohio was spanned by a fine
bridge, owned by the county of Wood, and connecting a
turnpike road with a street of the city called "Market
Street." In the unprecedented high water of July, 1888,
this noble structure was practically washed away, the
abutments and wing walls alone being left standing. It
became the interest, almost the necessity, of the county to
have this bridge reconstructed, and the duty of the County
Court to prosecute such reconstruction, either upon the
same site or upon one more eligible. The duty devolved
upon them exclusively, according to the twenty-fourth sec-
tion of the eighth article of the constitution, which pro-
vides as follows : "They (the County Court) shall also,
under such regulations as may be prescribed by law, have
the superintendence and administration of the internal
police and fiscal affairs of their counties, including the
establishment and regulation of roads, ways, bridges, pub-
lic landings, ferries and mills with authority to lay and
disburse the county levies;" and according to the Code,
which contains appropriate legislation for carrying into
effect said constitutional provision. See Code 1887, c. 42,
pp. 327, 328.

It so happened that, since the original construction of
the bridge, an act of congress had been passed which was
now construed to require the new bridge to be built, if at
the same place, some eighteen feet higher, and the addi-
tional height would require a material change in the
ground and grade and approaches upon either side of the
river. An alteration to better ground and grade, there-
fore, of both bridge and turnpike road, to some extent be-
came inevitable, as is admitted in the pleadings heretofore

had upon *mandamus*, and reported in 33 W. Va. 589 (11 S. E. R. 72.)

In the petition for *mandamus* presented at the relation of a number of private individuals, who describe themselves no doubt properly as "citizens and tax-payers of the county of Wood," the following language was used: "And petitioners aver that it is perfectly feasible and practicable, and can be done with less expense to the county of Wood, to rebuild and repair the old bridge upon the old site at the foot of Market street, and by so doing use the abutments now standing thereat, and still comply with the requirements of the secretary of war, by building said bridge at the required height, and that road-ways can be built as approaches to said bridge from the said Parkersburg and Elizabeth turnpike road perfectly accessible and feasible, and at very little cost and expense to the county; and that if it should become necessary to do so, in addition to the said last-mentioned approaches a new road can be built along the side of the hill leading to the said bridge with very little cost to the county, the land-owners having agreed to give the right of way for the said road to the county of Wood."

Similar admissions appear in the present case, so that we may regard it as a concession upon all hands that an alteration more or less extensive was rendered necessary, whether the old site should be reoccupied or a new one adopted.

The relators proceeded upon the idea that under section 23, c. 39, Code 1887, which provides that, "so far as any road, bridge or public landing belongs to, or is under the care or control of a county, it shall be the duty of the County Court to cause the same to be kept in good repair and condition," it became the imperative duty of the County Court to "repair," that is, rebuild the bridge upon the original site. This Court, however, held otherwise and refused the writ, upon the ground that the act complained of was judicial or *quasi* judicial, and that the County Court could not be compelled to rebuild the old bridge after it had already decided to build a new bridge across the same stream near the old site, thereby in effect

deciding to change the location of the former bridge. In rendering their opinion the president of the Court did suggest that the relators, if they felt themselves aggrieved by the action of the County Court, might in certain contingencies and by taking proper steps place themselves in a situation to have the action of the County Court reviewed by an appellate tribunal.

In pursuance, as they suppose, of this suggestion the present petitioners have applied for and obtained from the judge of the Circuit Court of Wood county a writ of *certiorari*, issued the 22d day of April, 1890, and made returnable to the 15th day of the next term of the said Circuit Court, which writ, it is conceded, will not authorize a return in a period of less than ninety days. In the mean time, by a suspending order accompanying the writ, the work of constructing the new bridge, now under contract, is suspended until the final determination of the matter by the Circuit Court. The County Court, without waiting for the return-day of the writ, has filed its petition in this Court for a writ of prohibition to prohibit the said judge, and the said Circuit Court, and the said citizens and taxpayers from further proceedings under the writ of *certiorari* and to vacate and supersede the restraining order which accompanied said writ. All further notice, rule or declaration being waived, the case comes on to be heard upon this petition for a writ of prohibition and the answer of respondents. The petition is based upon the allegation that the judge below has acted outside and in excess of his jurisdiction. This is denied in the answer, and it is further maintained, that, even were the charge true, the proper remedy is by appeal or writ or error, and that under the circumstances this extraordinary remedy can not properly be invoked. It does not appear that Judge BOREMAN, who granted the writ below, required any notice to be served upon the County Court, and hence no opportunity has been presented for relief in the lower court by motion to quash or otherwise.

Whether we should grant the writ depends upon the answer to two questions, which I shall now proceed to consider.—*First*—Had the judge of the Circuit Court jurisdic-

tion to issue the writ ?--*Second*—If not, is prohibition a proper relief under the circumstances and necessities of this case?

*First.* Had the judge of the Circuit Court jurisdiction to issue the writ of *certiorari?* I am of opinion that he had not. It appears from the record, that the petitioners had never made themselves parties to the proceedings in the County Court. In the case of *Conrad* v. *Lewis Co.*, 10 W. Va. 784, the mode in which citizens and tax-payers aggrieved by the discontinuance of a particular road might enter into the controversy of location and excess or breach of authority, was distinctly pointed out, as follows: After premising that the alteration of a public road did of itself affect a "discontinuance" of that portion of the old road, for which the new route is substituted, and calling attention to section 30, c. 42, Code W. Va., which at that time required a notice of three weeks to be given to the public by posting, *etc.*, before a county-road could be discontinued, the judge who delivered the opinion proceeded to say: "The County Court, therefore properly permitted the petitioners, citizens of Lewis County, to appear at the May term, 1874, and make themselves parties to this proceeding, and move to set aside this order discontinuing this road in part. * * * These petitioners, then, being parties to the controversy, having been permitted properly to appear and litigate the matter on its merits in the courts below, had clearly some rights of redress for the erroneous action of the County Court;" and this redress, the judge proceeds to point out, was by prosecuting proceedings in error in the Circuit Court, and from thence to this Court. But it must be observed that since this decision and opinion were rendered, in 1877, the law has been changed and amended to meet that very case, and to obviate the necessity of the public notice, which by construction this Court held was required, when by an alteration a part only of the altered road was discontinued. The amendment consists in substituting for the last sentence of section 30 of chapter 43 of the Code of 1868 the following: "But this section shall not be construed so as to prevent any County Court from altering any such turnpike or other road so transferred by the State as aforesaid, as provided for in

section thirty five of this chapter, whenever it becomes
necessary to do so in order to place such turnpike or other
road on better ground or grade than the existing location;
and when such alteration is made, and the said turnpike or
other road, as so altered, is completed and put in good
order and condition, the former location thereof, to the ex-
tent of such alteration, shall be discontinued without any
such notice as is herein required as to the discontinuance
of an entire county road in any county other than such turn-
pike or other road so transferred as aforesaid." Compare
Code 1868, p. 273, with Acts 1882, c. 75, and Code 1887,
p. 326.

It seems, therefore, that, when these proceedings to alter
the road in question and rebuild the bridge were com-
menced in the County Court, the law had been changed,
and no notice was required except to the land-owners, and
no other citizens than such land-owners could become par-
ties litigant. It follows, therefore, that these six private
citizens have no standing in court and appear here simply
as *amici curiæ* or *amici patriæ*, seeking to substitute their
own views of the public interests for those of the legiti-
mate and constitutional authorities, into whose keeping
those interests have been intrusted by the law of the land.
Even if it were possible for these six private citizens who
have obtained the writ of *certiorari* to make themselves
parties, as the law now stands, to a proceeding under sec-
tion 35 of chapter 43 of the Code by the County Court to
alter or establish a bridge, they have not taken any proper
steps to do so. They are not the same petitioners who ap-
plied for the *mandamus*. So far as the record discloses,
they have never appeared before the County Court, and
moved to set aside its order establishing the new location
and discontinuing the old, nor for any other purpose.
They did, indeed, in July, 1889, in common with four or
five hundred other citizens present a petition to the said
court, and "respectfully ask your Honors to reconsider your
action in locating the bridge across the Little Kanawha
river at the foot of Julianna street, and relocate it either
at Market street or some more central or convenient point,"
and did accompany this petition by the resolutions of a

public meeting on the same subject.  This they had a perfect right to do, but the filing of such a petition did not and could not make them litigants, or in any proper legal or judicial sense parties to the proceeding.  They stand here simply as six private citizens and tax-payers, who undertake to represent the whole county in opposition to the judgment and action of the properly constituted authorities, to whom, as we have seen, and as was decided in *State* v. *County Court*, 33 W. Va. 589, (11 S. E. R. 72) not only the statute but also the constitution has committed the judicial or *quasi* judicial determination of the question relating to the alteration, establishment and location of a county-bridge.  If these private gentlemen assuming to act in behalf of the public had charged bribery or corruption upon the constituted authorities, it is possible such a charge, in view of the principle that fraud is always to be relieved against, might give them a standing in court.  But no such charge is made.  They stand simply as private citizens who honestly believe that the decision and judgment of the tribunal appointed by the constitution to determine such questions are at fault and contrary to public interest in the matter of relocating and rebuilding a county-bridge.  They therefore seek to substitute their own judgment for that of the constitutional and legislative authorities, and to coerce the latter to abandon their own views and accept the views of these six influential citizens.  Clearly and obviously the Circuit Court could not entertain jurisdiction of appeal, writ of error or *certiorari* by parties, who, so far as the record discloses, had never appeared in the inferior court either in person or by attorney, and who stood in no other relation to the matter in hand than as representative men, who differed from the proper authorities upon a question committed by the twenty fourth section of the eighth article of the constitution to the arbitrament of such authorities. *Supervisors* v. *Gorrell*, 20 Gratt. 512.

I conclude, therefore, that the judge below had no authority or jurisdiction to issue this writ, because the six representative private citizens and tax-payers had not made themselves litigants, nor submitted any motion for relief, nor taken any exception in the inferior court, and had no

standing and no especial property nor interest to be affected, nor any pretext to interfere with the legitimate duties of the County Court. See *Bridge Co.* v. *Summers*, 13 W. Va. 476.

Having reached this conclusion we are to inquire, *secondly*, whether prohibition is the proper remedy under the circumstances and necessities of this case. I cordially indorse all that was said by this Court through Judge Green in *Jelly* v. *Dils*, 27 W. Va. 271, 272, in regard to our reluctance to employ this writ. The author from whom he quotes, Mr. High, thus lays down the law upon this subject:

"To warrant a court in granting this extraordinary remedy, it should clearly appear that the inferior tribunal is actually proceeding, or is about to proceed, in some matter over which it possesses no rightful jurisdiction." * * * "And, to warrant the relief, it must appear that the court or person against whom the writ is sought is about to exercise judicial or *quasi* judicial power, without authority, which will result in an injury for which there is no other remedy. The province of the writ is not necessarily confined to cases where the subordinate court is absolutely devoid of jurisdiction, but is also extended to cases where such tribunal, although rightfully entertaining jurisdiction of the subject-matter in controversy, has exceeded its legitimate powers." High. Extr. Leg. Rem. §§ 780, 781.

The Circuit Court or the judge having, as we have seen, exceeded his jurisdiction in granting the *certiorari*, and having made it returnable beyond the period of the annual county levy, and restrained the building of the bridge until the final action of the Circuit Court, I do not see that the remedy by appeal, even if such could be shown to exist, could at all meet the exigencies of this case or in any manner prevent or adequately compensate the threatened injury. The judge has himself effectually prevented any motion before him or any protest in his court against his jurisdiction by not giving any notice and by making the *certiorari* returnable to a date so remote as to cause great and necessary delay in prosecuting this much-needed public work. As was said in *Supervisors* v. *Gorrell*, 20 Gratt. 522, so we may say in this case: "A Circuit Court can not review a judgment of a County Court except in the cases

and in the mode prescribed by law. If a Circuit Court *ex mero motu* undertake to review a judgment of a County Court, it is an act of usurpation for which prohibition lies; so, if a Circuit Court undertake to review such a judgment on the petition of one who is not a party to it, the same remedy lies."

As for the remedy by appeal, if it exist at all, it should be remembered that these six private persons undertake to represent other tax-payers and the public generally; but should the Circuit Court determine the matter on final adjudication against the County Court, and an appeal or writ of error be allowed, against whom could such writ be prosecuted? Certainly not against the public generally, but, if at all, only against these six private individuals, and a final adjudication would be had against them upon the ground that they had no defined or certain interest. Thus nothing would be determined, and they would perhaps by the great delay have accomplished the defeat of measures for the public interest which its constitutional guardians in that behalf have devised and put in process of execution. I can not see, therefore, that any other remedy except prohibition can afford adequate and effectual relief in this case. Upon the whole, therefore, we are of opinion that the writ of prohibition should be awarded in accordance with the prayer of the petition.

WRIT AWARDED.