## 17708

Arthur W. STANLEY, Jr., by and through his Guardian *ad litem*, Theodosia K. Stanley, Arthur W. Stanley, Sr., Whitfield Sims, Beatrice Sims, Viola Samuel, Jemmon Bruce, Robert Wingate, Boyd Johnson, Catherine Johnson, as pupils of Mayo High School, and/or as electors, taxpayers, or parents of public school pupils, on behalf of themselves and as representatives of all others similarly situated, Appellants, v. Bennie A. GARY, as Supervising Principal of Mayo High School, G. C. Mangum, as Area No. 1 Superintendent of Education of Darlington County and the Darlington County Board of School Trustees, a Body Corporate, Respondents.

(116 S. E. (2d) 843)

*Elliott D. Turnage, Esq.,* of Darlington, *for Appellants,*

*Benny R. Greer, Esq.,* of Darlington, *for Respondents,*

November 2, 1960.

Moss, Justice.

One of the appellants in this action is a student in Mayo High School, Darlington, South Carolina. The other appellants are alleged to be electors, taxpayers, and parents of school pupils attending said Mayo High School. The respondent, Bennie A. Gary, is the Supervising Principal of said Mayo High School; the respondent, G. C. Mangum, is Area No. 1 Superintendent of Education of Darlington County; and the other respondent is the Darlington County Board of School Trustees.

It appears from the allegations of the complaint in this action that on or about March 8, 1960, some fifty pupils of Mayo High School refused to drink milk, furnished as a part of the lunchroom program menu, which was in containers bearing a certain label. It further appears that Bennie A. Gary, the Supervising Principal of said high school, assembled a meeting of the pupils of said school and "openly and menacingly threatened all of the pupils with summary expulsion from the school if they refused or continued to refuse to drink said milk." It is also alleged that on March 9, 1960, that certain of the students, including the appellant, Arthur W. Stanley, Jr., refused to drink said milk furnished as aforesaid, and that the respondent Gary singled out cer-

tain of the pupils as examples, including one of the appellants, and dismissed said pupils from said school with a note to their parents, which gave no reason for the dismissal, and offered no legal method by which the parents or the said pupils could defend themselves or effect their return to attendance in said school. It is further alleged that the parents of certain of the pupils did, on March 11, 1960, come to the school with said pupils and requested that they be re-admitted as students in said school and that the respondent Gary refused to make any charge against said pupils or to re-admit them as pupils in said school. It is then alleged that as a consequence of the arbitrary, menacing and violently threatening acts of the said Gary, that the pupils of said school have been placed in a condition of duress, tension and fear, and that because the appellants have been deprived of their rights, the said Gary is a person who has demonstrated his unfitness for the position of Supervising Principal of said school. The prayer of the complaint is that the Court enquire into the matters set forth in the complaint and that Bennie A. Gary, one of the respondents herein, be enjoined from threatening, coercing and intimidating the pupils of the said school in the manner mentioned in the said complaint, and that the other respondents be enjoined from continuing to maintain or employ the respondent Gary in the capacity of Supervising Principal of said school, or in any other capacity.

It is reasonable to conclude from the allegations of the complaint that a certain number of pupils in the Mayo High School had caused and brought about a boycott of certain milk being served in the school cafeteria. The complaint does not allege that the milk so served was impure or inferior in quality. There is no allegation of any just cause for the failure of the pupils to drink said milk.

The respondents demurred to the complaint on several grounds, among them being that the complaint fails to state a cause of action in that it shows on its face that the appellants have not exhausted available administrative procedures

by an appeal to the school trustees and to the County Board of Education. The trial Judge sustained the demurrer and dismissed the complaint on the ground that the appellants had not exhausted the available administrative procedures provided for by the Statute. Section 21-230 and Sections 21-247 through 21-247.5, 1952 Code of Laws of South Carolina. From the order sustaining the demurrer and dismissing the complaint, the appellants have duly appealed to this Court. This appeal can be disposed of by determining the question of whether the appellants were required to first exhaust administrative procedures before commencing this action. This is the first question posed by the appellants.

Under the provisions of Section 21-230, 1952 Code of Laws of South Carolina, the Board of Trustees of any school district has the power to (2) "Employ teachers from those having certificates from the State Board of Education, fix their salaries and discharge them when good and sufficient reasons for so doing present themselves, subject to the supervision of the county board of education;" and (3) "Suspend or dismiss pupils when the best interest of the schools make it necessary;".

Section 21-103 of the 1952 Code of Laws of South Carolina provides that "the county board of education shall constitute a tribunal for determining any matter of local controversy in reference to the construction or administration of the school laws, with the power to summon witnesses and take testimony, if necessary. * * *"

It is provided in Section 21-247 of the 1952 Code of Laws of South Carolina that subject to the provisions of Section 21-230 of the Code, "any parent or person standing *in loco parentis* to any child of school age, the representative of any school or any person aggrieved by any decision of the board of trustees of any school district in any matter of local controversy in reference to the construction or administration of the school laws * * * may appeal the matter in controversy to the county board of education by serving a

written petition upon the chairman of the board of trustees, the chairman of the county board of education and upon the adverse party within ten days from the date upon which a copy of the order or directive of the board of trustees was delivered to him by mail or otherwise. The petition shall be verified and shall include a statement of the facts and issues involved in the matter in controversy."

It is provided in Section 21-247.2 of the Code that the parties shall be entitled to a prompt and fair hearing by the county board of education which shall try the matter *de novo* and in accordance with its rules and regulations; and Section 21-247.3 of the Code provides that at any such hearing that the parties may appear in person or through an attorney and may submit such testimony, under oath, or other evidence as may be pertinent to the matter in controversy; and Section 21-247.4 of the Code provides that after the parties have been heard, the county board of education shall issue a written order disposing of the matter in controversy, a copy of which shall be mailed to each of the parties in interest; and it is then provided under Section 21-247.5 of the Code, that any party aggrieved by the order of the county board of education may appeal to the Court of Common Pleas of the county by serving a written verified petition upon the chairman of the county board of education and upon the adverse parties within ten days from the date upon which a copy of the order of the county board of education was mailed to the petitioner. The same section provides for a trial by the Circuit Judge *de novo* with or without reference to a master or special referee, and that the case shall be considered and disposed of as other equity cases are tried and disposed of, and all parties in interest shall have such rights and remedies, including the right of appeal, as are provided by law in such cases.

The present matter, the question of whether the respondent, Bennie A. Gary, shall be continued in his employment as Supervising Principal of Mayo High School, comes within the provision of the law as being a

"matter of local controversy" to be determined by the proper school tribunals provided for by statute.

It cannot be successfully urged that the matter in controversy in this appeal is not a matter of local controversy in reference to the construction or administration of the school law. It relates directly to the administration of the school law governing the disciplining of pupils in a high school. In the conduct of the public schools, it is essential that power be vested in the supervisory officials and teachers thereof in order to maintain discipline and promote efficiency. The maintenance of discipline and the standards of behavior in a body of students in a high school is a task committed to its faculty and officers and not to the courts. In matters of discipline, a broad discretion is accorded the faculty and teachers, subject to supervision by the trustees of said school, and the action of the trustees may be reviewed by the County Board of Education, and the action of the board may, in proper cases, be reviewed by the Courts.

In *Spedden v. Board of Education,* 74 W. Va. 184, 81 S. E. 724, 725, 52 L. R. A., N. S., 163, the court said:

"The law commits the government and conduct of the school, in general, to the discretion of the board of education of the district, and places it beyond that of the patrons. Let the results be good or bad, there is no remedy, so long as the board acts within the limits of its legal power and authority. If it employs such teachers as the law authorizes it to employ, the patrons cannot interfere, by injunction or otherwise, merely because it might have found others more competent or satisfactory. The same rule applies to all other things left to its discretion. *County Ct. v. Armstrong,* 34 W. Va. 326, 12 S. E. 488; *County Ct. v. Boreman,* 34 W. Va. 87, 11 S. E. 747."

In 47 Am. Jur., Schools, Section 180, at page 431, it is said:

"It is the duty of every principal or teacher in charge of a public school to maintain discipline and good order therein,

and to require of all pupils a faithful performance of their duties. To enable such teacher or principal to discharge his duties effectually, he must necessarily have the power to enforce prompt obedience to his lawful commands. Hence, it follows that he must have the power to suspend or expel a pupil for any breach of reasonable discipline while at school, or for any misconduct injurious to the good government or morals of the other pupils, whether explicitly covered by adopted rules and regulations or not, although a teacher's action in depriving a pupil of the privileges of the school is generally subject to review by the trustees, board of education, or other governing body of the school district."

In 47 Am. Jur., Schools, Section 181, at page 431, it is said:

"Subject only to the limitation that their actions must be reasonable, or in the enforcement of reasonable rules and regulations, school authorities may suspend or expel pupils for any insubordination or misconduct subversive of the discipline of the school. * * *"

The gravamen of the complaint of the appellants is that Bennie A. Gary, the Supervising Principal of Mayo High School, has demonstrated his incompetence on account of the disciplinary action taken by him against certain pupils in said school for their refusal to drink milk bearing a certain label. There is no charge in the complaint that the milk served to the pupils of said school did not conform to the standards set forth in Item 14, Vol. 7, page 642, of the 1952 Code of Laws of South Carolina, which has to do with the wholesomeness of food and drink served in school lunchrooms.

A "matter of local controversy" is presented when it is asserted that a duly elected teacher is unfitted to teach, or the employment of such person will result in harm to the school. In the case of *Pressley v. Nunnery, Co. Supt. of Education,* 169 S. C. 509, 169 S. E. 413, 414, it was said:

"* * * If, after the election of a teacher by a board of trustees, complaint should be made to the county board of education, by petition of patrons or other affected parties, or otherwise, that for reasons given the person employed is unfitted to teach or the employment of such person will result in harm to the school, etc., as was here alleged, it then becomes the duty of the board, under the provision of law quoted, to consider the matter, giving such hearings to the parties affected as may be proper in the circumstances, and, by express action, to indicate its approval or disapproval of the contract of employment. The election of a teacher being a 'matter of local controversy,' any party aggrieved may appeal, from the board's approval or disapproval of the action of the trustees, to the state board of education. *State ex rel. Windham v. Dick*, 134 S. C. 46, 131 S. E. 772. * * *"

The general powers granted to school trustees by Section 21-230 of the 1952 Code of Laws of South Carolina, clearly permits the trustees to delegate to the principal and superintendent of a school the authority to suspend or dismiss pupils when the best interests of the schools make it necessary. Aside from this authority, a principal or superintendent has the inherent power, where the interest of the school requires it, to suspend a pupil in a proper case, unless he has been deprived of such power by the affirmative action of the Board of Trustees.

Having held that the complaint only raises a "matter of local controversy" the parent or person *in loco parentis,* or the pupil, had the right to appeal from any action of the supervising principal to the Board of Trustees, and from any action of such board to the County Board of Education, and from there to the Circuit Court, where the entire matter could be heard *de novo* by the Circuit Judge.

In the case of *Brown et al. v. County Board of Education et al.,* 186 S. C. 325, 195 S. E. 642, relief was sought by the plaintiffs by way of injunction, to restrain the defendants from the exercise of the functions of trustees of a school

district, to which they had been appointed. The County Board of Education had removed the plaintiffs as trustees of a school district because of their failure to comply with an order of such county board. This Court held that a "matter of local controversy" in reference to the construction or administration of the school laws was presented, and that for the trial of this question, the Legislature, in the laws governing public schools, had provided an appropriate remedy, with suitable tribunals and methods of procedure. It was held in the cited case that a demurrer interposed by the defendants to the complaint should have been sustained because the Court of Common Pleas was without jurisdiction of said cause and that the matter should have been determined under the statutes heretofore cited. The appellants must exhaust the administrative remedies provided by the statutes hereinbefore cited before seeking relief in the courts for their grievances.

The order of the Circuit Court sustaining a demurrer to the complain herein will have to be affirmed in the interest of orderly procedure. It was proper for the lower Court to sustain the demurrer and to refuse to entertain jurisdiction of this action before the appellants had exhausted their administrative remedies. *Pullman Co. v. Public Service Commission,* 234 S. C. 365, 108 S. E. (2d) 571. *DePass v. City of Spartanburg et al.,* 234 S. C. 198, 107 S. E. (2d) 350, 351. In the last cited case, this Court said:

"The defendants interposed demurrer to the complaint which was sustained and it was dismissed, principally upon the ground that the court of equity will not take jurisdiction of the controversy at this stage, before plaintiff has availed herself of the administrative remedies under the ordinance. With this we agree and the judgment will be affirmed.

" 'A party aggrieved by the application of an ordinance must invoke and exhaust the administrative remedies provided thereby before he may resort to the courts for relief.' 62 C.J.S. Municipal Corporations § 206, p. 384. 'Courts are reluctant to interfere with administrative action prior to its

completion and in this sense not final. This reluctance has found expression in * * * the doctrine of exhaustion of administrative remedies and in a general requirement of final administrative action as a prerequisite to judicial review * * * The doctrine of exhaustion of administrative remedies requires that where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act. * * * The doctrine involves a policy of orderly procedure which favors a preliminary sifting process, particularly with respect to matters peculiarly within the competence of the administrative authority and serves to prevent attempts to swamp the courts by resort to them in the first instance. * * * The doctrine is sometimes said to rest upon the presumption that the administrative agency, if given a complete chance to pass upon the matter, will decide correctly.' 42 Am. Jur. 573, 580, 581, Public Administrative Law, Secs. 194, 197.

"Our prior decisions are generally in accord with the foregoing. For example see *American Surety Co. of New York v. Muckenfuss,* 172 S. C. 169, 173 S. E. 290; *Daniel v. Conestee Mills,* 183 S. C. 337, 191 S. E. 76; *Isgett v. Atlantic Coast Line R. Co.,* 223 S. C. 56, 74 S. E. (2d) 220; and *Dunbar v. City of Spartanburg,* 226 S. C. 360, 85 S. E. (2d) 281, 284. The last cited related to municipal zoning and concluded as follows: 'Appellant failed to first pursue the remedy provided by the Ordinance, and, having failed to do so, was not entitled to a writ of certiorari.' Here the instant plaintiff is likewise not entitled to maintain this action in equity."

For the reasons stated, we are of the opinion that the Court below properly sustained the demurrer.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.