Lisa Ann PHILLIPS, individually, as mother and natural guardian, and as guardian ad litem for and on behalf of James Kinley, Plaintiff,

v.

ANDERSON COUNTY SCHOOL DISTRICT FIVE; William M. Burriss, individually and as member and Chairman of the Board of Trustees of Anderson County School District Five, Linda Smith, Ann W. Huitt, Beverly H. Lewis, June P. Souviron, John W. Caldwell, Sr., Al Norris, Jr., R. Scott Drake, and J. Brant Copeland, individually and as members of the Board of Trustees of Anderson County School District Five; Karen C. Woodward, individually and as Superintendent of Anderson County School District Five; Don R. Saxon, individually and as Principal of Lakeside Middle School; and Richard A. Laughridge, individually and as Assistant Principal of Lakeside Middle School, Defendants.

No. Civ.A. 8:96–1500–21.

United States District Court,
D. South Carolina,
Anderson Division.

July 9, 1997.

William F. Able, Irmo, SC, for plaintiff.

Kenneth L. Childs, Columbia, SC, David T. Duff, Columbia, SC, Allen D. Smith, Columbia, SC, for defendants.

### ORDER

TRAXLER, District Judge.

Plaintiff Lisa Ann Phillips ("Phillips") instituted this suit for damages and for declaratory and injunctive relief on behalf of her minor son, James Kinley ("Kinley"), alleging that Defendants (collectively "Anderson County") conspired to deprive Kinley of his constitutional rights when they prohibited him from wearing a jacket made to look like

the Confederate Battle Flag ("the Confederate Flag jacket" or "the jacket") to Lakeside Middle School ("Lakeside"). Anderson County has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Having carefully considered the arguments made by the parties,[1] the court concludes as a matter of law that Anderson County had a reasonable basis for determining that Kinley's Confederate Flag jacket would result in a substantial and material disruption of and interference with the educational process at Lakeside and acted appropriately and within its authority in suspending Kinley for refusing to comply with the request that he remove the jacket. Accordingly, the court grants Anderson County's motion for summary judgment.

## I.

Lakeside is a middle school in Anderson County, South Carolina, which has approximately 970 middle school students in grades 6 through 8. Approximately 73% of the students are white, 25% of the students are black, and 2% are other minorities. Prior to January of 1996, Lakeside had in place a student dress code which provided that "attire should not interfere with classroom instruction" and that "[o]ffending students will be advised to correct their dress problem or visit the office where a parent will be called to bring appropriate clothes or pick up the student." Lakeside also had a disciplinary action policy for student interference with the instructional process or failure to obey school personnel.

Also prior to January of 1996, Lakeside Middle School had experienced several incidents of racial tension, including incidents resulting from its students wearing garments which depicted the Confederate Flag. Two such incidents occurred during the 1991–1992 school year. The first, which occurred in the fall of 1991 as the students were lining up to change classes, involved an altercation between a white male student wearing a shirt depicting the Confederate Flag and a black female student. The classes were ultimately disrupted and a student was nearly assaulted. The second incident occurred in the

Spring of 1992 when another white male student wore a Confederate Flag T-shirt to school. Racial remarks were exchanged among white and black students at a fast food restaurant directly across from the school, and a physical confrontation ensued. Some of the students were injured in the fight, and the incident was reported to the Anderson County Sheriff's Department.

Three additional incidents occurred during the 1994–1995 school year. In October of 1994, two black female students reported to the Lakeside principal, Mr. Don R. Saxon ("Saxon"), that they had observed a white male student wearing a garment depicting the Confederate Flag, and that when they asked him "what he meant" by wearing the Flag, the student responded that he disliked black people. School personnel requested that the student remove the garment, and the student complied. Later that school year, in March of 1995, the same white student got into a fight with a black male student across the street from the school. The following day, school officials were notified that the white student had brought a razor blade to school for the purpose of striking the black student. Upon receipt of this information, school officials sought out the white male student's cousin in order to determine the student's intention. The white male student's cousin was Kinley. Although school officials eventually were able to persuade Kinley to reveal his cousin's plan, Kinley was suspended for three days because of his involvement in the incident. Another episode involving the Confederate Flag occurred in the Spring of 1995 when a seventh-grade science teacher reported that a black female student and a white female student had gotten into an argument over the white student's wearing a Confederate Flag bandanna. The matter was settled when the white student complied with a request that she remove the bandanna.

In addition to these incidents directly related to the Confederate Flag, the school had experienced other incidents of racial unrest and tension, including a verbal altercation and threats of physical violence by four white

---

1. No hearing on this motion is warranted. *See* District of South Carolina Local Rule 12.08.

students towards black students during a class in November of 1995. By the 1994–1995 school year, Lakeside had instituted an informal policy of asking students to remove or turn inside-out their Confederate Flag clothing before it created disruptions. Indeed, Kinley testified that he and his cousin had been asked to do so during that year and that both had complied with the request.

On Friday, January 5, 1996 at approximately 8:30 a.m., the Assistant Principal of Lakeside, Mike Ruthsatz ("Ruthsatz"), discovered Kinley wearing a Confederate Flag jacket and brought him to Principal Saxon's office. Saxon asked Kinley to remove the jacket and to refrain from wearing it to Lakeside because of the previous problems the school had experienced with students wearing clothing items depicting the Confederate Flag. When Kinley refused to remove the jacket, his mother and stepfather were contacted by telephone and informed of the situation. Kinley testified his stepfather told him not to remove the jacket. Phillips and her husband were advised that Kinley could not wear the jacket to school and that Kinley might be suspended for insubordination. According to Phillips' testimony, her husband contacted the local press at the conclusion of the call with the school, and she and her husband left to go to the school. When they arrived, the press was not on-site, so they left and went to the fast food restaurant across the street from the school. Upon meeting a television truck, they returned to the school and signed Kinley out. The television station then conducted an interview of Kinley and his stepfather. Kinley was ultimately suspended from Lakeside for three days for refusing to comply with Saxon's request to remove the Confederate Flag jacket.

The following Tuesday, January 9, 1996, Saxon held a conference with Kinley and Phillips concerning Kinley's three-day suspension. Saxon informed them that Kinley would be allowed to return to Lakeside if he did not wear the jacket. Phillips kept Kinley out of school for the three-day suspension, which ended Friday, January 12, 1996. On that day, Phillips brought Kinley back to school wearing the Confederate Flag jacket. Saxon again asked Kinley and Phillips to remove the jacket, but they refused. Saxon then suspended Kinley for an additional five days.

The following Tuesday, January 16, 1996, Saxon held another conference with Kinley and Phillips concerning Kinley's five-day suspension. Saxon continued to refuse to allow Kinley to wear the jacket to Lakeside, and Phillips continued to refuse to return Kinley to school unless he was allowed to wear the jacket. Ultimately, Phillips sent Kinley to live with a relative and enrolled Kinley in another middle school. This lawsuit followed.[2]

## II.

Federal Rule of Civil Procedure 56(c) requires that this court enter judgment for Anderson County if (1) there is no genuine issue as to any material fact; and (2) the non-moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). In determining if a genuine issue of material fact has been raised, the court must construe all facts and reasonable inferences in favor of Phillips. *See id.* at 255, 106 S.Ct. at 2513–14. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," the court must grant summary judgment in that party's favor. *Id.* at 252, 106 S.Ct. at 2512. To survive Anderson County's motion for summary judgment, Phillips may not rest on her pleadings, but must establish that specific, material facts exist that give rise to a genuine issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265. In satisfying this burden, the *Anderson* Court explained, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. In this regard, "[s]ummary judgment serves the useful purpose of disposing of meretricious, pretended claims before the

---

2. Kinley has now returned to Lakeside Middle School.

court and parties become 'entrenched in a frivolous and costly trial.'" *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.,* 843 F.Supp. 1027, 1035 (D.S.C.1993) (quoting *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987)), *aff'd* 46 F.3d 1125, 1995 WL 25808 (4th Cir.1995) (unpublished) (per curiam). Guided by this procedural standard, the court examines the parties' contentions.

## A.

■ The crux of Phillips' complaint is that Kinley had a First Amendment right to wear his Confederate Flag jacket to Lakeside Middle School. Thus, Phillips contends that Anderson County's suspension of Kinley for failing to remove the jacket was a denial of his First and Fourteenth Amendment rights.

Although public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," *Tinker v. Des Moines Indep. Community School Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969), neither are their First Amendment rights "automatically coextensive with the rights of adults in other settings." *Bethel School Dist. No. 403 v. Fraser,* 478 U.S. 675, 682, 106 S.Ct. 3159, 3163–64, 92 L.Ed.2d 549 (1986). " 'It is generally held that the constitutional right to free speech of public secondary school students may be modified or curtailed by school regulations reasonably designed to adjust these rights to the needs of the school environment.'" *Williams v. Spencer,* 622 F.2d 1200, 1205 (4th Cir.1980) (quoting *Quarterman v. Byrd,* 453 F.2d 54, 58 (4th Cir.1971)).

In *Tinker,* the Supreme Court held that while "students are entitled to freedom of expression of their views," they may not engage in a type of expression that materially and substantially interferes with schoolwork or discipline. *Id.,* 393 U.S. at 511, 89 S.Ct. at 739.

> [C]onduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is ... not immunized by the constitutional guarantee of freedom of speech.

*Id.* at 513, 89 S.Ct. at 740. *See also Melton v. Young,* 465 F.2d 1332, 1335 (6th Cir.1972), *cert. denied,* 411 U.S. 951, 93 S.Ct. 1926, 36 L.Ed.2d 414 (1973) (upholding constitutionality of student's suspension for his refusal to stop wearing a Confederate Flag patch). Thus, students "cannot be punished merely for expressing their personal views on the school premises ... unless school authorities have reason to believe that such expression will 'substantially interfere with the work of the school or impinge upon the rights of other students.'" *Hazelwood School Dist. v. Kuhlmeier,* 484 U.S. 260, 266, 108 S.Ct. 562, 567, 98 L.Ed.2d 592 (1988) (quoting *Tinker,* 393 U.S. at 509, 512–13, 89 S.Ct. at 737–38, 739–40).

School authorities, however, are not required to wait until disorder or invasion occurs. *Quarterman,* 453 F.2d at 58. "[I]f there are substantial facts which reasonably support a forecast of likely disruption, the judgment of the school authorities in denying permission and in exercising restraint will normally be sustained." *Id.* Indeed, it has been held that the school authorities " 'have a duty to *prevent* the occurrence of disturbances.'" *Chandler v. McMinnville School Dist.,* 978 F.2d 524, 529 (9th Cir.1992) (emphasis added) (quoting *Karp v. Becken,* 477 F.2d 171, 175 (9th Cir.1973)); *see also Jeglin v. San Jacinto Unified School Dist.,* 827 F.Supp. 1459, 1461 (C.D.Cal.1993) ("[C]urtailment of [a] student's exercise of the right of free speech does not demand a certainty that disruption will occur, but only the existence of facts which might reasonably lead school officials to forecast substantial disruption.")

Anderson County contends that the Lakeside school authorities reasonably anticipated, based upon the prior incidents of disruption and unrest caused by Confederate Flag clothing, that a substantial and material disruption of the educational process would result if Kinley were allowed to wear the Confederate Flag jacket to school and that they acted appropriately and within their discretion when they prohibited Kinley from wearing the jacket to school. Thus, they contend the prohibition, and Kinley's suspension for

failing to adhere to it, did not violate Kinley's First Amendment rights.

Phillips and Kinley do not dispute that these prior incidents occurred. Instead, Phillips contends that the prior disruptions caused by students wearing garments depicting the Confederate Flag, and the accompanying racial tension, were insufficient for the Lakeside school authorities to reasonably forecast that Kinley's Confederate Flag jacket would create a disruption of Lakeside's classes. Specifically, Phillips and Kinley argue that Anderson County improperly relied upon the prior disruptions to reach their conclusion because the prior disruptions did not occur in the "context of classroom instruction" and because Kinley wore the jacket to school the day before he was stopped without incident.

The undisputed evidence reveals that Saxon, as principal of Lakeside, has been called upon to address five incidents of racial tension directly caused or escalated by the presence of Confederate Flag clothing (a symbol which is undisputedly offensive to at least some black students at the middle school), as well as additional incidents of racial disputes. These problems have, in turn, led to interference with important purposes of the school— to foster the students' ability to learn and to relate to one another. It can hardly be disputed that Saxon had, and continues to have, a responsibility to prevent such violence and racial unrest at the school.[3]

Phillips' argument that the prior incidents afford no basis for Saxon's decision because they did not occur in the "context of classroom instruction" does not avail her. *Tinker* and subsequent caselaw do not require that disruptions break out while a teacher is conducting a class (as opposed to, for example, between classes or during recesses and lunches). *See Id.,* 393 U.S. at 513, 89 S.Ct. at 740; *see also Hazelwood,* 484 U.S. at 266, 108 S.Ct. at 567. Nor can it be reasonably contended that arguments or fights which occur immediately before or after a class have no disruptive effect upon the teaching and learn-

ing process during actual class time. Consequently, the fact that some of the student confrontations have taken place across the street from Lakeside does not eliminate them from the equation. Instead, they are rightfully factors for inclusion in the calculus.

The fact that Kinley wore the jacket to school for one day without detection or incident, even if assumed to be true, is simply an insufficient basis upon which to conclude that the school officials were unreasonable in their forecast of likely disruption. One day free of conflict does not eliminate the school's significant history of problems caused by the Confederate Flag. Nor does it support a conclusion that the Confederate Flag would no longer cause disruptions at Lakeside or that Anderson County should have waited until the Confederate Flag caused yet another disruption at Lakeside before the school resumed its prohibition of students wearing Confederate Flag clothing. *See, e.g., Quarterman,* 453 F.2d at 58–59.

This court concludes, as a matter of law, that Anderson County had a reasonable basis for determining that Kinley's Confederate Flag jacket would likely result in another substantial disruption at Lakeside and that Anderson County has satisfied the "reasonable forecast" test. *Id.* As in *Tinker,* this case "lies in the area where students in the exercise of First Amendment rights collide with the rules of school authorities." *Id.,* 393 U.S. at 507, 89 S.Ct. at 737. At Lakeside Middle School, Kinley's right to wear the Confederate Flag must yield to the school's interest in affording his classmates an educational environment conducive to learning and, as much as possible, free from disruptions and distractions. Accordingly, Anderson County's motion for summary judgment on this issue is granted.

**B.**

■ Phillips also contends Anderson County violated Kinley's due process rights by applying rules which are unconstitutionally vague and overbroad and by applying the

---

**3.** Indeed, the problem continues. During the 1996–1997 school year, Kinley became involved in an incident at Lakeside with another student when the student told Kinley his Confederate

Flag jacket should be burned. The incident escalated into a shoving match, witnessed and cheered on by several additional students before it was stopped by school officials.

rules to Kinley in an arbitrary, capricious, and discriminatory manner. The challenged Lakeside rules provide that student "attire should not interfere with classroom instruction. Offending students will be advised to correct their dress problem or visit the office where a parent will be called to bring appropriate clothes or pick up the student." Lakeside rules also provide that discipline may be taken for "[a]cting in a manner so as to interfere with the instructional process (disruptions, etc.)" and for refusing to obey school personnel.

As an initial premise, Anderson County's decision to prohibit the wearing of Confederate Flag clothing at Lakeside (based upon the history of disruptive incidents caused by Confederate Flag clothing in the past) was "a legitimate exercise of the school officials' inherent authority to curtail disruption of the educational process even in the absence of a regulation" or written policy. *See Melton*, 465 F.2d at 1334. In addition, the Supreme Court has recognized that " 'maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures.' " *Bethel School Dist.*, 478 U.S. at 686, 106 S.Ct. at 3166 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985)). "Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Id.*

Prior to Kinley's suspension, he and his mother were made aware of Lakeside's policy of prohibiting students from wearing Confederate Flag clothing. Kinley testified he had been required to turn a Confederate Flag clothing article inside out the year before and that his cousin had also been required to remove or turn inside out Confederate Flag clothing articles on prior occasions. Kinley contends that he was told that he could not wear Confederate Flag clothing which also contained a slogan. However, it is undisputed that Kinley was not subjected to any punishment until after he (and his mother and stepfather) were specifically asked to remove the jacket

from the school premises and told that Kinley could not wear the jacket to school. Kinley was not suspended until he refused Saxon's request to remove the jacket, and Kinley was consistently advised by school officials that he could return to classes if he agreed to forego wearing his Confederate Flag clothing. Under these circumstances, the court concludes that the school dress code and disciplinary policies, coupled with the actual notice and warnings given by the school officials prior to suspending Kinley, gave Kinley "adequate warning" that he "could [be] subjected to sanctions" for refusing to remove the jacket. *See Bethel*, 478 U.S. at 686, 106 S.Ct. at 3166.

Phillips' argument that the dress code and/or Confederate Flag policy were applied to Kinley in an arbitrary, capricious, and discriminatory manner also fails. Phillips complains because Lakeside officials have not banned students from wearing Black Power Flag shirts, Martin Luther King, Jr. shirts, or shirts with a swastika. However, in the face of a properly filed motion for summary judgment, Phillips has produced no evidence that Anderson County prohibited Kinley from wearing the Confederate Flag merely because school authorities believed the symbol to be offensive and no evidence that a Black Power Flag shirt, a Martin Luther King, Jr. shirt, or a shirt with a swastika had ever been the cause of a disruption at Lakeside school.

Instead, Phillips points to testimony by the principal of Southwood Middle School ("Southwood"), Patricia D. Seawright, who testified she last had a problem with the Confederate Flag in 1994 when a student wearing a shirt with the Confederate Flag got into a fight with a minority student. Ms. Seawright testified the student "enjoyed fighting" and that she could not say the fight was directly due to the wearing of the Confederate Flag. She also testified that most fights and sexual harassment in her school occurred between students of the same sex.

Although the relationship was not made entirely clear to the court, Southwood is apparently another middle school in the same school district as Lakeside, but with a racial composition of approximately 50% black stu-

dents and 50% white students. Racial disputes (or the lack thereof) at Southwood have no relevance to the question of whether racial disputes and disruptions do or reasonably would occur at Lakeside, particularly given the undisputed presence of such disruptions at Lakeside prior to the incident giving rise to this lawsuit.[4] More importantly, Phillips, who may not rest upon the allegations of her complaint to defeat a properly filed motion for summary judgment, has failed to demonstrate that the dress code or disciplinary policies of Lakeside have been applied to Kinley in an arbitrary, capricious, or discriminatory manner. On the contrary, the only evidence of record is that the policy against allowing students to wear disruptive clothing, including Confederate Flag clothing, is consistently applied to all students at Lakeside. Accordingly, Anderson County is entitled to judgment as a matter of law on these claims as well.

### C.

■ Phillips also contends that the school board's delegation of the authority to Lakeside to develop and enforce its own dress code was unlawful and subjected Kinley to a greater likelihood of discriminatory treatment at Lakeside. As an initial premise, school boards have authority to delegate the power to develop and enforce rules of conduct for students. *See Stanley v. Gary,* 237 S.C. 237, 116 S.E.2d 843 (1960). Under S.C.Code Ann. § 59–19–90(3), school trustees are permitted "to delegate to the principal and superintendent of a school the authority to suspend or dismiss pupils when the best interests of the schools make it necessary." *Id.* 116 S.E.2d at 847 (interpreting precursor to S.C.Code § 59–19–90). Furthermore, "a principal or superintendent has the inherent power, where the interest of the school requires it, to suspend a pupil in the proper case, unless he has been deprived of such power by the affirmative action of the Board of Trustees." *Id. See also Fowler v. Williamson,* 39 N.C.App. 715, 251 S.E.2d 889, 892 (1979) (a "principal of a local school may adopt reasonable rules and regulations in the exercise of his powers and duties concerning matters not provided for and not inconsistent with the rules provided by higher authority."). Accordingly, the court concludes that Anderson County did not violate Kinley's due process rights by delegating to Lakeside officials the power to adopt the dress code.[5]

■ Finally, Phillips contends Kinley's due process rights were violated during the review process because the district superintendent, Dr. Karen C. Woodward, recommended Kinley's suspension and sat with the District's Board of Trustees when it was deliberating in executive session. In her deposition, Woodward testified she may have been present. After her deposition and consultation with other school officials, she filed an affidavit stating that she did not attend the executive session deliberations of the Board. Phillips has come forward with no evidence or testimony contradicting this sworn statement. Even assuming Woodward was present, however, it was incumbent upon Phillips to show actual bias to establish a due process violation, which she has not done. *See Lamb v. Panhandle Community Unit School Dist. No. 2,* 826 F.2d 526 (7th Cir. 1987) (no due process violation where principal and superintendent testified against student and attended board's closed-session deliberations where student failed to show some evidence of actual bias); *Newsome v. Batavia Local School Dist.,* 842 F.2d 920 (6th

4. The court also fails to see the relevance of testimony concerning whether sexual harassment occurs at another school (either within or between races) to any issue in this lawsuit.

5. Phillips further complains because Lakeside conducted no meeting to establish a dress code and failed to communicate its prohibition of Confederate Flag garments to the staff and faculty of the school. As discussed supra, the Lakeside officials reasonably concluded, based upon their history of problems with the Confederate Flag, that students should not be allowed to wear garments depicting it. In so concluding, Lakeside officials were acting within the parameters of their inherent authority to prevent disruptions and maintain order. Thus, a formal meeting was not required. Phillips presented no evidence to support her allegation that Lakeside failed to communicate the prohibition to its staff and faculty. In any event, it is undisputed that both Phillips and Kinley were aware of the prohibition and were given an opportunity to remove the Confederate Flag jacket prior to Kinley's suspension.

Cir.1988) (no due process violation where principal and superintendent who prosecuted the case merely sat in on board's closed-session deliberations; however, presentation by the administrators of new, previously unheard testimony to board while in closed session did violate due process); *Gorman v. University of Rhode Island,* 837 F.2d 7 (1st Cir.1988) (administrator's presence at board deliberations is not a violation of due process absent proof that the administrator actually influenced the board). Accordingly, the court concludes that Kinley's due process rights were not violated when he was sus- pended or during the review of his suspension by Anderson County, and Anderson County is entitled to summary judgment on these claims as well.

### III.

Having found as a matter of law that Anderson County and its school officials reasonably believed that Kinley's Confederate Flag jacket would create a disruptive environment at Lakeside Middle School and acted properly in suspending him for failure to comply with their request that he remove the jacket, the court concludes that Kinley's suspension was not violative of his constitutional rights and grants Defendants' motion for summary judgment.

**ACCORDINGLY, IT IS ORDERED** that the Defendants' motion for summary judgment is hereby granted.