Marlon COFFMAN, Plaintiff,

v.

Ben KUEHLER et al., Defendants.

Civ. A. No. CA–5–76–3.

United States District Court,
N. D. Texas, Lubbock Division.

Feb. 25, 1976.

Doyle Darce Curtis, Horace A. Mitchell, Mitchell & Curtis, Inc., Lubbock, Tex., for plaintiff.

Joe H. Nagy, Crenshaw, Dupree & Milam, Lubbock, Tex., for defendants.

## MEMORANDUM

WOODWARD, District Judge.

The above case came on to be tried before the court without a jury on the 23rd day of February, 1976, with all parties and their attorneys present in open court. The court has heard the evidence introduced by all parties and after con-

sidering such evidence, the briefs and arguments of the parties, files this memorandum opinion which shall constitute the court's findings of fact and conclusions of law which support the court's judgment and order that the relief prayed for by the plaintiff be denied.

It appears since the filing of this suit by Melvin Coffman, as next friend for Marlon Coffman, that the said Marlon Coffman has attained the age of eighteen years and he is here substituted as the actual and named plaintiff in this action.

Plaintiff, Marlon Coffman, was, at the pertinent times of this suit, enrolled as a senior student in the Morton High School. The defendants are the members of the board of trustees of the Morton Independent School District, the superintendent of the school district, and the principal of the high school. The complaint alleges a violation by the defendants of the plaintiff's civil rights under 42 U.S.C. § 1983, and the court has jurisdiction pursuant to 28 U.S.C. § 1343.

On or about November 21, 1975, the plaintiff, and another student, while enrolled in said high school, were absent without excuse. Upon their return to classes on the following day, the principal, Mr. Dodds, warned and advised the plaintiff and his companion that such conduct in the future would result in punishment involving a three-day suspension, and although disputed by the parties, the court finds that the plaintiff knew and understood that he would also be given "licks" if a similar violation occurred in the future. However, it is undisputed that at the time of the second unexcused absence, as hereinafter found, Marlon Coffman and his companion on that occasion, prior to their absence, knew and understood that such conduct would result in a three-day suspension with a zero being given on their grades for such days, and that "licks" would also be administered.

On or about January 14, 1976, a Wednesday, a school counselor visited a class during regular school hours in which the plaintiff was present. At this time, the matter of students visiting various colleges for a "college day" was explained and those interested in furthering their education were advised that if, under the proper circumstances, they attended and visited a college campus their absence would be excused.

The following day, Thursday, January 15th, the plaintiff and a companion went to Mr. Dodds' office requesting permission to visit Levelland, Texas on that date for the announced purpose of visiting South Plains Junior College in Levelland. Mr. Dodds told them that the necessary permission forms from their parents had not been prepared, that they should come back later and pick up the required forms to obtain their parents' consent, and that they should return to their classes. The plaintiff and his companion went to their next class, but after it was completed, walked out of the high school and off the grounds and went to Levelland. Prior to leaving Morton, they went by the plaintiff's parents' house and confirmed with Mrs. Coffman that he, Marlon Coffman, could go to Levelland. This was the confirmation of the consent that his parents had given him the night before. Although the plaintiff and his fellow student did go to Levelland, they admittedly did not visit the college or any of its officials except to drive through the campus there. This can hardly be construed as a "college day" visit, and the court can conclude that their absence on this date, January 15th, was not only an unexcused absence, but was also a violation of the principal's refusal to give them permission to leave the school. The plaintiff's acts on this occasion were deliberately committed by him with his full knowledge that he was in disobedience of the school authorities. The court finds that at this time these two students were well aware of the punishment that could be visited upon them for their actions, to-wit: three days' suspension and "licks."

On Friday, January 16, 1976, the plaintiff and his companion went to the principal's office to get a pass to re-enter

their classroom after the unexcused absence of the previous day. A student, after being absent, was required to obtain such a pass from the principal or the principal's office before he would be permitted to again attend classes. The receptionist in the principal's office advised the two young men to see the principal in his office, which they did. Mr. Dodds, the principal, immediately summoned one of the teachers, Mr. Bill Johnson, as a witness to the proceedings. It is not clear from the evidence exactly how the fact was made known to Mr. Dodds, but the court finds that he was made aware, on this occasion, that the plaintiff had the written permission of his parents to go to Levelland, but the written excuse (Pltfs. Ex. 1) which Marlon Coffman had with him on that occasion was not delivered to Mr. Dodds. Mr. Dodds informed the two students that they were absent without excuse and reminded them that they were in direct violation of his instructions of the day before; and, in accordance with his previous advice to them concerning punishment, told them that they would have to take "three days' vacation." At this particular time, nothing was said about the "licks" but the two students were aware of their liability to this punishment for these infractions. The two were then dismissed and left the campus. Subsequently the plaintiff's companion, after taking his three-day suspension, returned to school and took his "licks," and is now regularly enrolled.

It should be noted here that since the date of the suspension, the teachers have given the plaintiff assignments for two weeks' work to be done while he was at home, but according to the plaintiff's father, he has not fulfilled any of these assignments.

Shortly after leaving the campus, Marlon Coffman sought out his father and found him in downtown Morton within 20 to 30 minutes. Also, Mr. Dodds telephoned the Coffman residence and informed Mrs. Coffman that her son had been expelled. The father immediately went to the high school and visited with the principal. He was advised at that time of the plaintiff's unexcused absence without permission and was also told that the punishment was three days' suspension and that he would be given "licks" when he returned to school which would be administered in the presence of at least one of his parents. The father at this time told Mr. Dodds of the permission that had been given by the Coffmans for their son to go to Levelland and further told him that he felt in view of the past circumstances and in particular the discussion in school concerning "college day" that this punishment was unfair and that his son was being singled out for treatment. At this time, Mr. Melvin Coffman was given the full opportunity to say anything or present anything he desired to the principal.

During the trial, the plaintiff introduces some evidence to the effect that others had been absent without excuse and had not received the same punishment that the plaintiff did. However, it appears that in those cases the students were excused either because of illness or at least their unexcused absence was not taken after a direct refusal of permission to leave as the plaintiff was told in this case.

Mr. Dodds, on the morning of January 16, 1976, also wrote a certified letter to the parents of the plaintiff which was received by them on the next day, Saturday. (Defts. Ex. 2).

Further, on Friday afternoon, January 16th, the father visited with Mr. Travis, the school superintendent, to talk with him about this particular problem. Mr. Travis arranged, as a result of this meeting, for the Coffmans to appear at a regular meeting of the school board held on Monday, January 19, 1976. Mr. and Mrs. Coffman did attend the school board meeting and appeared before the board for a hearing which lasted from 30 minutes to an hour. There is no question but that on this occasion everyone was aware of the charges against the plaintiff and the punishment that had been and was to be imposed upon him. After a full and complete hearing in this

respect, the school board unanimously refused to alter the suspension or the "licks."

Plaintiff has not re-entered school since the date of his visit to Levelland on January 15, 1976 and is not currently enrolled although the only impediment to attending class is his failure to take the "licks."

### CRUEL AND UNUSUAL PUNISHMENT

■ This court may afford plaintiff relief in this controversy only if there has been a denial of constitutional rights to the plaintiff. First, plaintiff contends that the corporal punishment or "licks" would, under the facts of this case, constitute cruel and unusual punishment in violation of the Eighth Amendment of the Constitution of the United States. In this respect the Morton Independent School District had in effect Rule 603 (Pltfs. Ex. 2) which provides for infliction of corporal punishment provided that "another means of discipline have failed and if administered in the presence of another teacher or the principal." A similar requirement appears in *Baker v. Owen*, 395 F.Supp. 294 (Three-Judge Court, M.D.N.C.), aff'd 423 U.S. 907, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). This requirement, among others, is that corporal punishment should not be employed as a first line of punishment for misbehavior. Here, not only is this punishment yet to be inflicted, but on a prior unexcused absence the plaintiff was given a reprimand without either suspension or corporal punishment, and since this type of warning and reprimand did not work the first time, the principal evidently determined that the infliction of corporal punishment would be necessary.

The paddle to be used is shown by the evidence to be 23¾ inches long, 2⅝ inches wide, with a paddle thickness of ¼ inch, and weighing 7⅛ ounces. The facts as found by the court in this case do not constitute any form of cruel or unusual punishment under the guidelines of *Baker v. Owen, supra*: first, the cor-poral punishment to be imposed would be only after the plaintiff was previously informed that this specific misbehavior could occasion its use and it was not employed as a first line of punishment for this misbehavior as evidenced by the reprimand that was given in November 1975. Second, the corporal punishment to be imposed will be imposed in the presence of another teacher and also in the presence of one or more of his parents. Likewise, and it should be kept in mind that the corporal punishment has not been yet inflicted, there have been three, perhaps four, hearings before school officials as well as a full evidentiary hearing in this court.

Plaintiff cannot complain that this type of punishment is cruel or unusual or that its infliction when he returns to school will constitute cruel or unusual punishment under these circumstances. This court concludes that such "licks" will not constitute cruel and unusual punishment under the Eighth Amendment to the Constitution of the United States.

### DUE PROCESS

■ Rule 603, Plaintiffs' Ex. 2, of the Morton Independent School District is reasonably related to the need of the school district to maintain order and discipline and is not unconstitutional on its face nor in its application under the facts presented to the court here. The plaintiff not only had foreknowledge of this rule providing for corporal punishment, but he was made fully aware that his continued misconduct as in this case would result in punishment and that the punishment would consist of a suspension from classes and corporal punishment. The rule itself as well as the announced punishment to be applied in the circumstances of plaintiff's misconduct are not unreasonable and they have a real and substantial relation to the object sought to be obtained—the maintenance of discipline among the students and the establishment of an effective learning atmosphere.

■ The plaintiff challenges the procedures employed by the defendants in this case and asserts that he was denied procedural due process. There can be no question but that procedural due process requirement, insofar as corporal punishment is concerned, has been satisfied, but a different situation is presented with respect to the procedural due process in connection with the suspension of three days. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), holds that due process requires, in connection with suspension of ten days or less, that the student be given oral or written notice of the charges against him and, *if he denies them* (emphasis added), he is entitled to an explanation of the evidence against him and an opportunity to present his version. This decision holds that generally this notice and hearing should precede the student's removal from school. However, the Court places an exception to this general rule. If a prior notice and hearing are not feasible, as where the student's presence endangers persons or property or threatens disruption of the academic process, thus justifying immediate removal from school, the necessary notice and hearing should follow as soon as practicable.

This court is of the opinion that the requirements of *Goss v. Lopez, supra*, have been satisfied. First, on the morning of January 16, 1976, there can be no dispute that the plaintiff knew it was necessary that he secure permission to go to classes because of his unexcused absence of the day before, and that after he had been denied permission to leave the school on that day he did so without any permission from the school authorities. Knowing of his misconduct and the fact that the principal was confronting him with these charges, the plaintiff did not make any attempt to deny the validity of the charges against him when he met with the principal on Friday morning. It appears, that in the absence of such denial, *Goss v. Lopez, supra*, would not require any prior hearing.

Further, even had there been a denial of the misconduct by the plaintiff, this court is of the opinion that a sufficient due process hearing was afforded him within a time period that would satisfy *Goss v. Lopez*. First, even without a denial of the fact and reason for his absence, the plaintiff made the principal aware that he had the permission of his parents not to be in school. This is not sufficient to justify plaintiff's misconduct as the school authorities have a countervailing and superior right over the parents to require attendance at classes unless the reason for absence would be provided for under Texas law. Section 21.035 of the Education Code, Vernon's Annotated Texas Statutes, provides that there may be an excuse from attendance requirements under certain circumstances,[1] but none of these circumstances, as enumerated in this section, are present in this case. Even until this day, the plaintiff has added nothing else factually to his defense. This court feels that a due process hearing was held in the principal's office and he presented fully to the principal his defense, *i. e.*, he had parental consent to go to Levelland.

---

1. "§ 21.035. VIOLATIONS OF ATTENDANCE REQUIREMENTS

"(a) Violations of the compulsory attendance law by absence after enrollment shall be determined upon the basis of the provisions of this section.

"(b) Any child not excepted from compulsory school attendance may be excused, as provided by this section, for temporary absence resulting from personal sickness, sickness or death in the family, quarantine, weather or road conditions making travel dangerous, or any other unusual cause acceptable to the teacher, principal, or superintendent of the school in which the child is enrolled.

"(c) The reason for an excused absence must be stated in writing and signed by the parent or other person standing in parental relation to the child.

"(d) The person discharging the duties of attendance officer of the school may investigate any case in which an excused absence is requested.

"(e) Any teacher giving instruction to any child within the compulsory attendance age shall promptly report any unexcused absence to the person serving as attendance officer for the school."

The court is of the opinion that the meeting of the plaintiff with the principal before his suspension, satisfied and afforded him all due process, procedurally, to which plaintiff was entitled under *Goss.*

But, if the court be mistaken as to the sufficiency of the hearing before the principal, the visit by the plaintiff's father with the principal, within one or two hours after the suspension, is sufficient to satisfy the requirements of due process that a hearing be held as soon as practicable. At this time, when the student had been out of school for only one or two hours, and after the plaintiff had told his father of the matters concerning his punishment, the father was informed by Mr. Dodds of the details of the misconduct and the charges against plaintiff, the punishment to be inflicted, including both suspension and "licks," and the father was given every opportunity to say what he desired to the principal. It is true that the plaintiff was not present on this occasion, but the father was there in his parental capacity and after the student himself had informed him of the difficulties, and there is no evidence whatsoever that he was denied the right to be present. In fact the absence of the plaintiff at this meeting and at the subsequent school board meeting was the result of his parents' decision not to take him and not because the defendants prevented his attendance. The court finds that at this meeting the necessary verbal notice of the charges was given to and known by all parties and that the hearing did follow as soon as practicable. The evidence in this case indicates that this school district was having severe disciplinary problems and if the principal had not been firm and prompt in his punishment, this court finds that there could have been a disruption of the academic process because of the failure of the school officials to enforce promptly their previously announced intentions in this respect. Even so, this hearing, held almost immediately after the pronouncement of the suspension, can be found to be one that followed the suspension so closely as to be almost simultaneous therewith for all practical purposes.

In view of the two hearings on the morning of January 16, 1976, the superintendent's cooperation in securing a hearing before the school board, and the full school board hearing on Monday, January 19, 1976, all, when taken either separately or collectively, are sufficient to have afforded procedural due process to the plaintiff.

As the United States Court of Appeals for the Fifth Circuit has held in a comparable punishment case, *Ingraham v. Wright,* 525 F.2d 909 (5th Cir. 1976), "the concept of due process is premised upon fairness and reasonableness in light of the totality of circumstances," and then later this Court holds that "we do not believe that infliction of a paddling subjects a schoolchild to a grievous loss for which Fourteenth Amendment due process standards should be applied."

The totality of the circumstances in this case compels this court to conclude and find that plaintiff was afforded both substantive and procedural due process as applied to his suspension, and that it was fair and reasonable that he be suspended for the three-day period and be given "licks." No procedural due process rights under the Fourteenth Amendment are to be accorded the plaintiff for the proposed corporal punishment under *Ingraham v. Wright, supra,* but even should it be accorded him, it has been more than amply provided here.

## EQUAL PROTECTION

As noted above, plaintiff's conduct on the occasion in question was different and more serious than acts of a similar nature by other students. The evidence did show that others had been excused without punishment for absences that were not previously authorized or justified, but none of the examples shown by the evidence were of acts by students who deliberately left the school premises after being refused permission by the principal to do so and after having been warned on a previous occasion

that such conduct by that particular student would result in the exact punishment which was imposed in this case. The plaintiff has failed to establish by the proof any evidence that he was denied equal protection of the laws.

Accordingly, a judgment will be entered denying plaintiff all relief.