23167

SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH and South Carolina Protection and Advocacy System for the Handicapped, Inc., Intervenors/Appellants v. STATE of South Carolina, Respondent. In the Interest of DARREN J., Child under the age of 17 years.

(390 S. E. (2d) 185)

Supreme Court

*Kennerly M. McLendon, Mark W. Binkley, Office of Gen. Counsel of S. C. Dept. of Mental Health,* Columbia, and *David Burlington,* of *S. C. Protection and Advocacy System for the Handicapped, Inc.,* Greenville, *for intervenors/appellants.*

*Asst. Sol. Blake A. Martin,* Georgetown, *for respondent.*

Argued Oct. 5, 1988.

Decided March 12, 1990.

TOAL, Justice:

This is a juvenile proceeding out of which arose questions concerning the authority of the Family Court to commit children within its jurisdiction to the South Carolina Department of Mental Health (DMH). Specifically, the issue raised on appeal is whether the Family Court has the authority to commit juveniles to DMH for "safekeeping." Although the specific case involving Darren J. is now moot, this appeal was allowed because it raises a question that is capable of repetition, but which usually becomes moot before it can be reviewed.

Darren J., a seventeen year old minor, was charged with felony DUI and three counts of grand larceny. Due to a number of factors, including the fact that Darren could not return to his home, he had suicidal tendencies, there was a possibility that he would flee if he was released from custody and there is a lack of an appropriate juvenile detention center in Georgetown County, the Family Court judge issued an order requiring DMH to keep Darren in "protective custody" until a transfer hearing was held to transfer jurisdiction to General Sessions. DMH and the South Carolina Protection and Advocacy System for the Handicapped, Inc. argue on appeal that the Family Court does not have the authority to commit a minor to DMH for "protective custody" or "safekeeping."

## BACKGROUND

The practice of committing juveniles to DMH for safekeeping prior to adjudication has developed because of the lack of better alternatives. Usually this situation occurs when the child has been taken into custody for the commission of some offense and factors are present such as those in the case of Darren J., which make it necessary to detain the child prior to adjudication. Placement in DMH also occurs, however, in abuse and neglect and incorrigibility cases.

Prior to the amendment of S. C. Code Ann. § 20-7-3230, these children were sent to the Department of Youth Services; however, this statute was revised in 1984 to prohibit this practice. Section 20-7-3230 provides in pertinent part: "[t]he commitment of a child to any reception and evaluation center or youth correctional institution of the department [DYS] may be made only after the child has been adjudicated delinquent." This statute was amended apparently as the result of an incident where a child was sent to DYS for safekeeping pending trial and he hung himself. Unfortunately, the Legislature did not specify where the children should be detained prior to adjudication.

The real issue in this case is what to do with these children pending adjudication. The Family Court has the authority to temporarily detain a child and make arrangements for his custody. *See*, S. C. Code Ann. §§ 20-7-600 and

20-7-620. But in the situation with which we are faced, the Family Court does not have an adequate place to detain the child and protect him or others from harm caused by the child.

On the other hand, DMH cites numerous problems that are caused by committing a juvenile for safekeeping. Some of these adverse effects include the following:

(1) DMH's funds that are earmarked to care for mentally ill children are expended.

(2) It contributes to the chronic overcrowding in the children's unit.

(3) It results in less staff availability and therefore diminished treatment.

(4) It results in increased stress on staff and patients and a corresponding increase in the potential for adverse incidents.

(5) If an accident occurred it could result in DMH and its employees being subject to liability for monetary damages under 42 U. S. C. § 1983.

The solution to this problem is beyond the control of this Court. It is the responsibility of the Legislature to designate an appropriate place for the temporary detention of these children. What we will decide in this opinion involves only the statutory authority of the Family Court to commit juveniles to DMH for safekeeping or protective custody.

## ANALYSIS

The Family Court is a statutory court created by the Legislature and, therefore, is of limited jurisdiction. Its jurisdiction is limited to that expressly or by necessary implication conferred by statute. The jurisdictional authority of the Court is set forth in the Children's Code. S. C. Code Ann. § 20-7-10, *et seq.*

The Family Court has specific statutory authority to commit juveniles to the Department who are in need of an examination or treatment. Section 20-7-400(A)(2) grants the Family Court original and exclusive jurisdiction "[f]or the treatment or commitment to any mental institution of a mentally defective or mentally disordered or emotionally disturbed child. *Provided,* that nothing herein is intended to

conflict with the authority of probate courts in dealing with mental cases...."[1] In addition, Section 20-7-1330(c) specifically authorizes the Family Court to "[c]ause any child concerning whom a petition has been filed to be examined or treated by a physician, psychiatrist or psychologist and for such purpose may place the child in a hospital or other suitable facility."

Therefore, the Family Court is expressly granted the authority to commit a child to DMH for the purposes of examination or treatment. This authority, however, may not conflict with that of the probate courts. Section 62-1-302(a)(6) vests the Probate Court with *exclusive jurisdiction* over the involuntary commitment of a person. Therefore, we construe these statutes to mean that the Family Court has the authority to order treatment or an evaluation for a child, but may not involuntarily commit a child for an indefinite period of time. Absolutely no authorization is given for the detention of a child in DMH in the absence of the need for an examination or treatment.

Furthermore, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed. *Jackson v. Indiana*, 406 U. S. 715, 92 S. Ct. 1845, 32 L. Ed. (2d) 435 (1972). To comply with this requirement, the reasons for committing the child must be established and set forth in the order and the confinement must cease when those reasons no longer exist.

We find that juveniles who are sent to DMH for safekeeping are not provided with adequate due process protection. In most cases, as with Darren J., there is no finding that the juvenile is mentally defective, that he is in need of an examination or that he will benefit from treatment. Most of these children are sent to DMH until "adequate housing" can be found. It is impermissible,

---

[1] We reject DMH's argument that the terms "mentally defective," "mentally disordered" or "emotionally disturbed" do not include a mentally ill person. Accordingly, we hold that the Attorney General erred in opining that the Family Court does not have jurisdiction to commit a mentally ill person to DMH for treatment. 1980 Op. Atty. Gen. 96.

however, to confine children in a mental institution just because an adequate detention facility is unavailable.

While we realize that the Family Court is trying to fulfill its duty to provide for the best interest of the child when it commits a juvenile to DMH for safekeeping, we cannot allow the Family Court to do that which it is unauthorized to do. Therefore, we hold that the Family Court may not commit a child to DMH for safekeeping or protective custody. The Family Court may order the treatment or evaluation of a child; however, the reasons for such an order must be clearly established. When the treatment or evaluation has ended, then the child's confinement in DMH must cease.

For the reasons discussed above, the lower court is reversed.

GREGORY, C. J., and HARWELL, CHANDLER and FINNEY, JJ., concur.