24399

William A. BYRD, Sr., as Guardian for William A. Byrd, Jr., A Minor Under the Age of Eighteen (18), Appellant v. IRMO HIGH SCHOOL and Lexington School District 5 of Lexington and Richland Counties, Respondents.

(468 S.E. (2d) 861)

Supreme Court

---

*J. Mark Taylor,* of *Kirkland, Wilson, Moore, Allen & Taylor,* of West Columbia, *for Appellant.*

*David T. Duff, Kenneth L. Childs, David E. Dubberly* and *Andrea E. White,* all of *Childs & Duff,* of Columbia, *for Respondents.*

Heard Nov. 1, 1995.

Decided Mar. 25, 1996; Reh. Den. Apr. 23, 1996.

TOAL, Justice:

William A. Byrd, Sr., who brought this action on behalf of his minor son, appeals the circuit court's order granting Irmo High School's motion to dismiss.[1] We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On August 26, 1994, while attending an Irmo High School football game on school grounds, William A.Byrd, Jr. ("Student") was stopped approximately 9:15 p.m. by a security officer. Student was in tenth grade at Irmo High School ("Irmo"), which is situated in School District No. 5 of Lexington and Richland counties. After briefly questioning Student, the officer called Irmo's associate principal Mary Bost to the scene. They both determined that Student's breath smelled of alcohol. Student admitted having consumed alcohol at approximately 6:15 p.m., prior to coming onto school grounds. Irmo's assistant principal Bob Rollings saw the questioning of Student by Bost and the officer, but did not speak with them at that time. Later in the evening, it was decided that Student should be suspended for ten days for coming onto campus after having consumed alcohol. Rollings contacted Student's parents over the weekend to inform them that the school would either uphold the ten-day suspension or recommend expulsion.

On Monday, August 29, 1994, Student and his parents met with Bost and Rollings to discuss the incident. Student reiterated his story about having consumed alcohol prior to coming to the football game. The suspension was upheld for the period from August 29 through September 12, 1994, and this was confirmed by a letter from Rollings to Student's parents. On August 30, 1994, the parents appealed the suspension to Irmo's principal Anna Hicks. She upheld the suspension.

Student's attorney contacted the school district's office about the possibility of a further appeal. The office informed him that the district's policy did not allow for appeals of certain suspensions beyond the level of the school principal.[2] Stu-

---

[1] Although Byrd, Sr. is appealing this case on behalf of his son, the son will, for the purposes of clarity and simplicity, be described as the appellant in this opinion.

[2] The district's appeals procedure in August 1994 was that if the grade-level assistant principal suspended the student, then the suspension was appealable to the principal. If, on the other hand, the principal imposed the suspen-

dent then initiated this action. On September 1, 1994, the circuit court issued a temporary restraining order vis-á-vis the suspension. The court dissolved this order on September 6. On the same day, Student petitioned the Supreme Court for supersedeas, which was denied.

Three days later, the circuit court granted Irmo's motion to dismiss under Rules 12(b)(1) and 12(b)(6), SCRCP, finding that the circuit court lacked subject matter jurisdiction to hear the appeal of the school officials' decision to suspend student and that the school officials had complied with procedural due process requirements in suspending Student.

Student appeals, arguing that the circuit court erred in:

1. holding that it had no subject matter jurisdiction over appeals involving suspensions of public school students;

2. holding that Irmo's suspension policy complied with due process requirements; and

3. granting Irmo's 12(b)(6) motion to dismiss, where the case presented a novel issue of law.

Since the filing of the appeal, Irmo has moved to have the matter dismissed. Before reaching the merits of this case, we will first address Irmo's motion to dismiss appeal.

## LAW/ANALYSIS

### A. Motion to Dismiss

In its motion to dismiss, Irmo argues that this Court lacks subject matter jurisdiction to hear this action because the issues have been rendered moot by events occurring after the filing of this appeal. It asserts that Student's suspension occurred in August and September 1994, that Student has since returned to school, and that the suspension has been cleared from Student's record.

Before any action can be maintained, there must exist a justiciable controversy. *Midland Guardian Co. v. Thacker*, 280 S.C. 563, 314 S.E. (2d) 26 (Ct. App.), *cert. denied* (1984). A justiciable controversy in a real and substantial controversy which is appropriate for judicial determina-

---

sion, then the decision could be appealed to the district hearing officer. Because in this case the grade-level assistant principal had imposed the suspension, Student's appeal was limited to the principal, and he could not appeal to the district hearing officer.

tion, as distinguished from a dispute or difference of a contingent, hypothetical or abstract character. *Guimarin & Doan, Inc. v. Georgetown Textile & Mfg. Co.*, 249 S.C. 561, 155 S.E. (2d) 618 (1967). This Court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy. *Jones v. Dillon-Marion Human Resources Dev. Comm'n*, 277 S.C. 533, 291 S.E. (2d) 195 (1982). Mootness has been defined as follows: "A case becomes moot when judgment, if rendered, will have no practical legal effect upon existing controversy. This is true when some event occurs making it impossible for [the] reviewing Court to grant effectual relief." *Mathis v. South Carolina State Highway Dep't*, 260 S.C. 344, 346, 195 S.E. (2d) 713, 715 (1973).

However, there exist certain exceptions to the mootness doctrine. One exception allows courts to examine matters that are capable of repetition, yet evade review. South Carolina appellate decisions have not been entirely consistent in defining this principle. Some cases have held that under the exception, a court can take jurisdiction only if (1) the challenged action in its duration was too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the action again. *See Treasured Arts, Inc. v. Watson*, 319 S.C. 560, 463 S.E. (2d) 90 (1995) (Davis Adv. Sh. No. 22 at 33); *In re John Doe*, 318 S.C. 527, 458 S.E. (2d) 556 (Ct. App. 1995); *In re Kaundra C.*, 318 S.C. 484, 458 S.E. (2d) 443 (Ct. App. 1995); *Howard v. Bibbs*, 287 S.C. 636, 340 S.E. (2d) 566 (Ct. App. 1986); *In re Angela Suzanne C.*, 286 S.C. 186, 332 S.E. (2d) 542 (Ct. App. 1985).

Other cases have taken a less restrictive approach in defining the exception, holding that a court can take jurisdiction, despite mootness, if "the issue raised is 'capable of repetition but evading review.'" In *re Darlene C.*, 278 S.C. 664, 665, 301 S.E. (2d) 136, 137 (1983) (quoting *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed. (2d) 147 (1973)). In effect, this latter approach differs from the former in that it does not require a reasonable expectation that the same complaining party be subjected to the action again. *See South Carolina Dep't of Mental Health v. State*, 301 S.C. 75, 390 S.E. (2d) 185 (1990) (although specific case is moot, appeal allowed because it raises a question that is capable of repetition, but

which usually becomes moot before it can be reviewed); *Evans v. South Carolina Dep't of Social Servs.*, 303 S.C. 108, 399 S.E. (2d) 156 (1990) (although development renders case moot, controversy presents a recurring dilemma which the Court will address to clarify the law); *Steinle v. Lollis*, 279 S.C. 375, 307 S.E. (2d) 230 (1983) (issues are not moot given that the underlying dispute is one capable of repetition yet evading review). We now clarify that this less restrictive approach is the appropriate standard in determining the applicability of the evading review exception of the mootness doctrine.

Applying this standard, we find that even if it is assumed that the issue in the present case is moot, it is an issue that is capable of repetition, but which will evade review. Short-term student suspensions, by their very nature, are completed long before an appellate court can review the issues they implicate. Therefore, we conclude that the present case clearly fits into the evading review exception of the mootness doctrine, even if it were not otherwise appropriate for the Court to address this appeal.

### B. Subject Matter Jurisdiction over Student Suspensions

As to the merits of this appeal, Student first contends that the lower court erred in holding that circuit courts lack subject matter jurisdiction over appeals of suspensions of public school students. We agree.

Chapter 63 of Title 59 of the S.C. Code addresses the issue of student discipline. Section 59-63-220 provides: "Any district board may confer upon any administrator the authority to suspend a pupil ... from the school not in excess of ten days for any one offense. . . ." S.C. Code Ann. § 59-63-220 (1990). The next section addresses the procedures related to suspension of students:

> When a pupil is suspended from a class or a school, the administrator shall notify, in writing, the parents or legal guardian of the pupil, giving the reason for such suspension and setting a time and place when the administrator shall be available for a conference with the parents or guardian. . . . *After the conference the parents or legal guardian may appeal the suspension to the board of trustees or to its authorized agent.*

S.C. Code Ann. § 59-63-230 (1990) (emphasis added).

The above provision on suspensions is immediately followed by the statutory provision on expulsions:

> The board may expel for the remainder of the school year a pupil for any of the reasons listed in § 59-63-210.[3] If procedures for expulsion are initiated, the parents or legal guardian of the pupil shall be notified in writing of the time and the place of a hearing either before the board or a person or committee designated by the board. At the hearing the parents or legal guardian shall have the right to legal counsel and to all other regular legal rights including the right to question all witnesses. If the hearing is held by any authority other than the board of trustees, the right to appeal the decision to the board is reserved to either party. . . . *The action of the board may be appealed to the proper court. . . .*

S.C. Code Ann. § 59-63-240 (1990) (emphasis added).

A review of these statutory provisions reveals that there exists a qualitative difference in the appellate procedures granted to students being suspended and those being expelled. Under section 59-63-240, expelled students have at the hearing (by way of parents or legal guardian) "the right to legal counsel and to all other regular legal rights including the right to question all witnesses." Moreover, the student has the additional right to appeal the action of the board to "the proper court." These rights clearly are not enumerated in section 59-63-230, the suspension provision.

Where a statute expressly enumerates the requirements on which it is to operate, additional requirements are not to be implied. *Trayco, Inc. v. United States*, 994 F. (2d) 832 (Fed. Cir. 1993). Because the expulsion provision expressly grants the student a right to appeal to "the proper court," and no such language exists in the suspension provision, it appears that the Legislature intended that

---

[3] Among the reasons listed in section 59-63-210 are "any crime, gross immorality, gross misbehavior, persistent disobedience, or for violation of written rules and regulations established by the district board, county board, or the State Board of Education, or when the presence of the pupil is detrimental to the best interest of the school." S.C. Code Ann. § 59-63-210 (1990).

suspended students not be entitled to a right to appeal beyond "the board of trustees or . . . its authorized agent."[4] *See* S.C. Code Ann. § 59-63-230. The additional requirement of a right to appeal to "the proper court" will not be implied where the suspension provision expressly enumerates the requirements on which it is to operate.

Student argues that the above provisions are not controlling; instead, the Court should look to sections 59-19-510 and 59-19-560. Section 59-19-510 states:

> Subject to the provisions of § 59-19-90,[5] any parent or person standing in loco parentis to any child of school age, the representative of any school or any person aggrieved by any decision of the board of trustees of any school district in any matter of local controversy in reference to the construction or administration of the school laws or the placement of any pupil in any school within the district, shall have the right to appeal the matter in controversy to the county board of education. . . .

S.C. Code Ann. § 59-19-510 (1990). Further, under S.C. Code Ann. § 59-19-560 (1990), orders of the county board of education may be appealed to the court of common pleas. Citing four South Carolina cases, Student contends that these two provisions provide suspended students with the right to appeal to the circuit court. Three of these decisions, *Lexington County Sch. Dist. One v. Bost*, 282 S.C. 32, 316 S.E. (2d) 677 (1984), *Lexington County Sch. Dist. One v. Mayer*, 282 S.C. 36, 316 S.E. (2d) 679 (1984), and *Andrews v. Dorchester County Sch. Dist. No. 2*, 292 S.C. 392, 356 S.E. (2d) 439 (Ct. App. 1987), are inapposite as they do not involve student suspensions; rather, they address appeals by employees of school districts. The only case cited by Student that does relate to student suspensions is *Stanley v. Gary*, 237 S.C. 237, 116 S.E. (2d) 843 (1960), which states that "the action of the trustees [of the school] may be reviewed by the County Board of Education, and the action of the board may, in proper cases, be reviewed by the Courts." *Id.* at 243, 116 S.E. (2d) at 846.

---

[4] In this case, under the district's Student Behavior Code, the principal constituted the "authorized agent" of the board of trustees.

[5] Section 59-19-90 sets forth the general powers and duties of school trustees. S.C. Code Ann. § 59-19-90 (1990).

*Stanley* initially appears to support Student's position; however, a closer examination of the history of the relevant statutes reveals that Student's reliance on Stanley is misplaced. The statutory provisions which the *Stanley* Court interpreted are found in the 1952 Code of Laws of South Carolina and its 1956 amendments. *See* 1952 S.C. Code of Laws, §§ 21-247 to -247.5 (Supp. 1960). These constitute the predecessor provisions of current S.C. Code Ann. §§ 59-19-510 to -560. Neither the 1952 Code sections nor its 1956 amendments contain any provisions on student discipline. Specific statutes on the subject of student discipline did not exist until 1973 when the Legislature passed Act No. 331, 1973 S.C. Acts 407, which came to be codified as 1962 S.C. Code of Laws, §§ 21-771 to -777 (Supp. 1975). These provisions, the progenitors of current sections 59-63-210 to -270, for the first time set forth statutory procedures for the suspension and expulsion of students.

The enactment of later statutory provisions delineating a specific disciplinary process evinces an intent by the Legislature that students should use such procedures and not the earlier-enacted, more general appeals procedure. The general rule of statutory construction is that a specific statute prevails over a more general one. *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div.*, 319 S.C. 556, 462 S.E. (2d) 858 (S.C. Sup. Ct. filed Sept. 18, 1995) (Davis Adv. Sh. No. 21 at 22). Thus, *Stanley*'s declaration that suspended students can appeal to the circuit court—based on a prior, more general statute—is no longer valid because thirteen years after the case, the Legislature fashioned a statutory scheme that specifically outlined the procedures for handling student disciplinary matters. Therefore, the circuit court's ruling that it lacked subject matter jurisdiction to hear the matter is correct.

Such a ruling is not only supported by statutory history, but by public policy reasons as well. At the United States Supreme Court observed in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed. (2d) 725 (1975), such "[b]rief disciplinary suspensions are almost countless." *Id.* at 583, 95 S.Ct. at 740, 42 L.Ed. (2d) at 740. If students and parents were allowed to appeal every short-term suspension, then circuit courts could be flooded potentially with thousands

of such cases. Not only would this place a severe strain on an already overburdened judicial system, but perhaps more importantly, the limited financial and human resources of schools and school districts would be deleteriously affected if every student suspension had to be defended through the court system. Imposing "even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more that it would save in educational effectiveness." *Id.* at 583, 95 S.Ct. at 740-41, 42 L.Ed. (2d) at 740. Accordingly, we hold that the clear dictates of law and policy require that student suspensions, unlike expulsions, not be appealable to circuit courts.

### C. Due Process

Students next argues that the circuit court erred in holding that Irmo's suspension policy complies with due process requirements. We disagree.

The thrust of Student's argument is that although section 59-63-230 meets the due process requirements of *Goss v. Lopez*, proper procedure was not followed in the present case. He asserts that he was never given the informal hearing to which he was entitled under *Goss*, the suspension being in effect before Student's parents even had the opportunity to meet with school officials. Further, he contends that he was denied any review by an independent body.

In *Goss* the United States Supreme Court declared that "the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures requested by that clause." *Goss*, 419 U.S. at 574, 95 S.Ct. at 736, 42 L.Ed. (2d) at 734-35. The Court held: "Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581, 95 S.Ct. at 740, 42 L.Ed. (2d) at 739.

The Court observed that there need be no delay between the giving of notice and the time of the hearing:

In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is. . . . Since the hearing may occur almost immediately following the misconduct, it follows that as a general rule notice and hearing should precede removal of the student from school.[6]

*Id.* at 582, 95 S.Ct. at 740, 42 L.Ed. (2d) at 739. In the latter part of its opinion, the court described the hearing as "an informal give-and-take between student and disciplinarian, preferably prior to the suspension," a requirement that would "add little to the fact-finding function where the disciplinarian himself has witnessed the conduct forming the basis for the charge." *Id.* at 584, 95 S.Ct. at 741, 42 L.Ed. (2d) at 740. *Goss* addressed solely the question of short-term suspensions, those not exceeding ten days. "Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.*

In the present case, Student's procedural due process rights, as explicated by *Goss*, were satisfied. When he was stopped by the security officer and the associate principal, "an informal give-and-take between the student and disciplinarian" took place. *See Goss*, 419 U.S. at 584, 95 S.Ct. at 741, 42 L.Ed. (2d) at 740. After smelling alcohol on Student's breath, the associate principal accused Student of having drunk alcohol. Student had the opportunity to explain his version of the facts, which he did by admitting he had consumed a beer prior to coming to the game. For short-term suspensions, the due process requirements mandated by *Goss* were satisfied by school officials. The hearing which took

---

[6] It should be noted that the Supreme Court did not impose an absolute requirement that notice and hearing precede removal of the student from the school: "We agree . . . that there are recurring situations in which prior notice and hearing cannot be insisted upon. Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school. In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable. . . ." *Goss*, 419 U.S. at 582-83, 95 S.Ct. at 740, 42 L.Ed. (2d) at 739.

place between the student and associate principal is precisely the kind of informal hearing which *Goss* envisions. *Goss* requires no more. But in addition to the preceding opportunity, over the weekend following the incident, the assistant principal discussed the matter by telephone with Student's parents. Moreover, Student was allowed, along with his parents, to meet with other officials the following school day. He was further allowed to appeal to the school principal. Hence, Student's due process rights have not been violated because Irmo more than fully complied with the requirements of *Goss*.

Our analysis of the *Goss* standards is consistent with the interpretations of the overwhelming majority of courts that have considered the issue. For example, in *Palmer v. Merluzzi*, 868 F. (2d) 90 (3d Cir. 1989), a student was suspended for drinking alcohol and smoking marijuana at an after-school activity. In order to fulfill a course requirement for his broadcast technology class, the student had gone to the school's radio station near school premises. The next morning beer stains and a marijuana pipe were discovered in the radio station. The school disciplinarian met with the student later in the day, and during the meeting, the student admitted to drinking beer and smoking marijuana at the radio station the previous evening. He was suspended for ten days from the school and for sixty days from the school's football team. The Third Circuit concluded that the student's informal meeting with the disciplinarian satisfied the due process requirements of *Goss v. Lopez* for purposes of the ten-day suspension. *Palmer*, 868 F. (2d) at 94. The student's involvement was never in dispute, and during the conference with the school official, the student had the opportunity to present his version of the events and to argue for leniency.

Likewise, the Seventh Circuit, in *Lamb v. Panhandle Community Unit Sch. Dist. No. 2*, 826 F. (2d) 526 (7th Cir. 1987), addressed the requirements of *Goss* in the context of a three-day suspension of a student who had consumed alcohol at a school outing. The principal informally discussed the incident with the student shortly after it occurred. The student knew the infraction of the school's rules he was accused of committing, and he was given an opportunity to present his version of the facts. Further, the student admitted that he had been drinking. The court found that *Goss*'s notice and hearing re-

quirements had been satisfied by school officials. *Lamb*, 826 F. (2d) at 528.

Numerous other courts have reached similar conclusions in considering short-term student suspensions under the standards of *Goss*. *See Keough v. Tate County Bd. of Educ.*, 748 F. (2d) 1077, 1080 (5th Cir. 1984) (where a high school student discussed his disciplinary infractions with the principal, where the student was given the choice of a paddling or a ten-day suspension, and he chose to have the suspension, the "informal give-and-take sessions" between the two met the procedural due process requirements for short-term suspensions); *Baxter v. Round Lake Area Sch.*, 856 F. Supp. 438 (N.D. Ill. 1994) (due process requirements satisfied where student was taken to dean's office and given a chance to present his side of the story and was given notice of the charges against him); *Hill v. Rankin County*, 843 F. Supp. 1112 (S.D. Miss. 1993) (*Goss*'s requirements satisfied where principal questioned student about altercation); *Bystrom v. Fridley High Sch.*, 686 F. Supp 1387 (D. Minn. 1987) (students received rudimentary process due them where, prior to suspension, they met and discussed matters with the assistant principal), *aff'd*, 855 F. (2d) 855 (8th Cir. 1988); *Boster v. Philpot*, 645 F. Supp. 798 (D. Kan. 1986) (where students admitted to principal their involvement in vandalism, due process did not require that they be given an opportunity to present their side of the story); *Darby v. Schoo*, 544 F. Supp. 428 (W.D. Mich. 1982) (students were afforded a *Goss*-type hearing where they met with assistant principal and had opportunity to explain their involvement in incident); *Pegram v. Nelson*, 469 F. Supp. 1134 (M.D. N.C. 1979) (procedures followed by principal were fully in accord with *Goss* where he gave opportunity to student to explain his version of the incident and later discussed the matter with student and his father); *Davis v. Central Dauphin Sch. Dist. Sch. Bd.*, 466 F. Supp 1259 (M.D. Pa. 1979) (requirements of *Goss* met where at meeting with principal, student was aware of charges against him and had ample opportunity to present his version of the incident); *Fenton v. Stear*, 423 F. Supp. 767 (W.D. Pa. 1976) (where principal confronted student about an incident and student admitted accusation, no further notice or hearing was necessary); *Coffman v. Kuehler*, 409 F. Supp. 546 (N.D. Tex. 1976) (under *Goss*, due process was afforded stu-

dent where he met principal and presented his defense).

Hence, the sheer weight of authority compel s affirmance of the circuit court's finding that Student's due process rights were not violated.

### D. Novel Issue of Law

The last issue that Student raises is that the circuit court erred in granting Irmo's 12(b)(6) motion to dismiss because this case presents a novel issue of law. This contention is without merit.

We have held that important questions of novel impression should not be decided on demurrer. *See Jackson v. Atlantic Soft Drink Co.*, 286 S.C. 577, 336 S.E. (2d) 13 (1985). Although the circuit court granted Irmo's motion to dismiss, this was after the court heard the testimony of a number of witnesses. Thus, the 12(b)(6) motion was really in the nature of a summary judgment motion. Even if it is assumed that the circuit court ruled upon a 12(b)(6) motion, declining review of this case until after the record has been fully developed would accomplish little under the present circumstances as the determinative facts are not in dispute. The parties' disagreement centers not on the underlying facts of the case, but rather on the interpretation of the law relating to appeals by suspended students and to the process due such students. Therefore, developing the record further would not aid in the resolution of the issues presented.

### CONCLUSION

For the foregoing reasons, the circuit court's order is AFFIRMED.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.