758 S.E.2d 919

**Lee C. PALMS and Nelle S. Palms, as Guardians ad Litem for L.P., a minor, Respondents,**

v.

**The SCHOOL DISTRICT OF GREENVILLE COUNTY, Appellant.**

Appellate Case No. 2013–002232.

No. 5237.

Court of Appeals of South Carolina.

Heard May 20, 2014.

Decided May 30, 2014.

Rehearing Denied July 10, 2014.

Thomas Kennedy Barlow and Kenneth L. Childs, Childs & Halligan, PA, both of Columbia, and Rodney Douglas Webb, of Greenville, for Appellant.

Carl F. Muller, of Greenville, for Respondents.

J. Theodore Gentry and Wade S. Kolb III, Wyche, P.A., both of Greenville, for amici curiae GeriAnn Bell and David Bell, as Guardians ad Litem for J.B., a minor, and Susan Stall and Russell Stall, as Guardians ad Litem for H.S., a minor.

FEW, C.J.

In this appeal, we hold it is not appropriate for courts to review the decisions of school administrators and school districts regarding how a student's grade point average (GPA) and class rank should be calculated, except on allegations of corruption, bad faith, or a clear abuse of power.  We reverse.

## I. Facts and Procedural History

In the fall of 2012, L.P. transferred from Riverside Military Academy in Georgia to Southside High School in Greenville County to begin his junior year. School administrators at Southside calculated L.P.'s GPA using the grades shown on his transcript from Riverside. According to this initial calculation, L.P. was the highest ranked student in Southside's junior class. Another student's mother expressed concern to Southside's administrators that Riverside's grading policy required some of L.P.'s grades to be inflated, and thus Southside incorrectly calculated L.P.'s GPA. Southside's administrators initially informed the student's mother they calculated L.P.'s GPA according to the School District's grading policy, and they would not change the calculation. Eventually, however, Southside recalculated L.P.'s GPA from 5.215 to 5.048, which reduced his class rank from first to sixth.

L.P.'s parents met with school administrators at Southside and expressed their dissatisfaction with the recalculation, but Southside refused to restore L.P.'s original GPA and class rank. L.P.'s parents then filed this lawsuit, asserting the School District violated South Carolina law and its own grading policy in recalculating L.P.'s GPA. They sought a writ of mandamus directing the School District to restore L.P.'s GPA and class rank to their original values, and an injunction prohibiting the School District from altering his GPA in a manner inconsistent with the writ. The trial court issued an order granting the writ of mandamus and injunction.

## II. Justiciability

We find the trial court should not have reached the merits of the issues raised in this case because these issues are not appropriate for judicial determination. Our supreme court has refused to interfere with the internal decisions of school administrators and school districts "unless there is clear evidence of corruption, bad faith, or a clear abuse of power." *Davis v. Greenwood Sch. Dist. 50*, 365 S.C. 629, 635, 620 S.E.2d 65, 68 (2005); *accord Singleton v. Horry Cnty. Sch. Dist.*, 289 S.C. 223, 227–28, 345 S.E.2d 751, 753–54 (Ct.App. 1986). The court has recognized that judicial review of such decisions must be limited to allow educational authorities to

exercise the discretion necessary to carry out the duties imposed upon them. *See Laws v. Richland Cnty. Sch. Dist. No. 1,* 270 S.C. 492, 495, 243 S.E.2d 192, 193 (1978) ("In view of the powers, functions, and discretion which must necessarily be vested in educational authorities if they are to execute the duties imposed upon them, this Court cannot substitute its judgment for that of these authorities.").

Here, L.P.'s parents did not allege the School District acted corruptly or in bad faith, or abused its power, and they presented no evidence that would support such an allegation. The trial court commented in its order it "assign[ed] no blame to anyone for the change" in L.P.'s GPA, and stated the School District may have made the change "in a well-intentioned effort at what it considered to be fairness and equality in interpreting [L.P.'s] transcript from [Riverside]." We find no basis to question the trial court's characterization that the School District acted with a good-faith desire to place its students on equal footing academically.

We acknowledge that the cases cited above setting the standard for court involvement in school affairs are not factually identical to this case. In *Davis,* the decision at issue involved financial incentives for school district employees who obtained national board certification. 365 S.C. at 632–33, 620 S.E.2d at 66–67. *Singleton* involved an employment dispute, where the plaintiff sought to expunge a two-day suspension from his record and recover lost pay for those days. 289 S.C. at 224–26, 345 S.E.2d at 752–53. However, we believe the restraint the courts exercised in those cases is even more appropriate here, where we are asked to intervene in an even more fundamental function of a school district—grade calculation.

We also find support for our decision in several opinions of the Supreme Court of the United States. In *Epperson v. Arkansas,* the Court cautioned that judicial intervention in the operation of the public school system requires "care and restraint." 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228, 234 (1968). It further noted, "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Id.* In subse-

quent cases, the Court has exercised caution in deciding cases involving decisions of academic institutions. *See Bd. of Curators of Univ. of Missouri v. Horowitz,* 435 U.S. 78, 92, 98 S.Ct. 948, 956, 55 L.Ed.2d 124, 136 (1978) ("Courts are particularly ill-equipped to evaluate academic performance."); *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523, 532 (1985) ("Considerations of profound importance counsel restrained judicial review of the substance of academic decisions.").

The circumstances of this case demonstrate that courts should not intervene in academic disputes. This conflict appears to have arisen when L.P. informed another Southside student that Riverside's grading policy provided that five points be added to a student's grade for honors courses, and ten points be added for certain advanced placement courses. The other student's mother contacted Riverside and verified these provisions of its grading policy. She then emailed administrators at Southside to explain Riverside's policy and complain that "when [L.P.] transferred into Southside, his already weighted courses got another 'weighting' since we weight ours a different way." She wrote, "I do not believe that [L.P.'s] GPA is accurately reflected because it seems he has been double-bumped." After a series of emails between school administrators, district officials, and Riverside that lasted three months, Southside changed the grades L.P. received in honors and advanced placement classes at Riverside and recalculated his GPA. This sparked another series of emails, letters, and meetings lasting an additional three months and ending only when the School District's lawyer wrote L.P.'s parents' lawyer to inform him the decision was final.

L.P.'s parents then filed this lawsuit claiming the School District's grading policy, which is actually a State policy that section 59–5–68 of the South Carolina Code (2004) mandates the districts follow, required Southside to accept the grades shown on the Riverside transcript and incorporate those grades into the formula Southside uses to calculate the GPA for a transferring student. The School District disagreed, contending "the four corners of [L.P.'s Riverside] transcript, at a minimum, create[ ] an ambiguity," and "[n]either South Carolina law nor the [grading policy] directly addresses which

grades (actual or bumped) the School District should use in calculating [L.P.'s] GPA." L.P.'s parents dispute that his grades were "bumped," arguing Riverside teachers actually *deflate* students' grades in honors and advanced placement classes in anticipation of the points Riverside's policy provides will be added. They also argue the other parent's inquiry was improper in the first place because she had no access to L.P.'s grades and no right to contact Riverside or discuss the grades with Southside.

These questions of law and disputed facts are not part of our analysis, except to the extent they illustrate the difficulties courts and schools would face if we were to intervene in the academic decisions of schools and school districts. The necessity of addressing these and many other points of law and disputes of fact in order to resolve a lawsuit between parents as to whose child gets to be valedictorian demonstrates why our supreme court has kept the judiciary out of the internal affairs of schools and school districts. Our supreme court addressed these policy concerns in *Byrd v. Irmo High School,* 321 S.C. 426, 468 S.E.2d 861 (1996):

> If students and parents were allowed to appeal every short-term suspension, then circuit courts could be flooded potentially with thousands of such cases. Not only would this place a severe strain on an already overburdened judicial system, but perhaps more importantly, the limited financial and human resources of schools and school districts would be deleteriously affected if every student suspension had to be defended through the court system. Imposing even truncated trial-type procedures might well overwhelm administrative facilities in many places and, by diverting resources, cost more than it would save in educational effectiveness.

321 S.C. at 435–36, 468 S.E.2d at 866–67 (internal quotation marks omitted). We find the *Byrd* court's reasoning to be even stronger when applied to the question of whether courts should intervene in decisions regarding the calculation of a student's grades and GPA.

### III. Conclusion

We find the trial court erred in reaching the merits of this case. The trial court should have dismissed the case because it

does not present a justiciable controversy. We therefore **REVERSE** the trial court's order. In addition, we **SUPERSEDE** the trial court's injunction and specifically permit the School District to immediately recalculate L.P.'s GPA in accordance with its own interpretation of its grading policy as applied to the facts of this case.

SHORT and GEATHERS, JJ., concur.