# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Faye P. Croft, Personally and as Trustee of the James A. Croft Trust; James A. Croft Trust; William A. Harbeson; Heyward G. Hutson; James Stephen Greene, Jr.; South Carolina Public Interest Foundation; Summerville Preservation Society; and Dorchester County Taxpayers Association, individually, and on behalf of all others similarly situated, Petitioners,

v.

Town of Summerville and Town of Summerville Board of Architectural Review, Respondents.

Appellate Case No. 2020-000334

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Dorchester County
Edgar W. Dickson, Circuit Court Judge

---

Opinion No. 28036
Heard March 3, 2021 – Filed June 16, 2021

---

## VACATED

---

Michael T. Rose, of Mike Rose Law Firm, PC, of Summerville, and W. Andrew Gowder Jr., of Austen & Gowder, LLC, of Charleston, for Petitioners.

G. Waring Parker, of G. Waring Parker Law Firm, LLC, of Summerville, and Timothy Alan Domin, of Clawson & Staubes, LLC, of Charleston, for Respondents.

Jay Bender, of Baker, Ravenel and Bender, LLP, of Columbia, for Amicus Curiae South Carolina Press Association.

**JUSTICE JAMES:** In this appeal, several Summerville residents and public interest groups (Petitioners) ask the Court to invalidate approval granted by the Town of Summerville Board of Architectural Review (the Board) for construction of a proposed development project (the Project). Petitioners contend the Board violated the Freedom of Information Act (FOIA)[1] and various Summerville ordinances. At some point during Petitioners' appeal of the Board's decision, Applegate & Co. (the Developer) decided not to go forward with the Project. Since there remains no actual controversy for this Court to decide, we vacate the court of appeals' decision and dismiss Petitioners' appeal as moot.

## Background

On July 9, 2014, the Town of Summerville (the Town) and Town of Summerville Redevelopment Corporation entered into an agreement with the Developer to construct the Project. The Project, to be called "The Dorchester," included plans for a conference center, hotel, condominiums, and parking garage. The Developer subsequently sought design approval from the Board.

The Board is a seven-member public body charged with reviewing applications for construction, modification, and demolition within Summerville's historic district. Summerville, S.C., Code of Ordinances § 32-175(b), (f). As a public body, the Board must comply with the record disclosure and open meeting requirements of FOIA and Summerville's ordinances. *See* S.C. Code Ann. §§ 30-4-30, -60; Summerville, S.C., Code of Ordinances §§ 32-176(d)-(e), -182(b). Pertinent provisions of both are discussed below.

---

[1] S.C. Code Ann. §§ 30-4-10 to -165 (2007 & Supp. 2020).

On July 21, 23, and 29, 2014, six Board members[2] met on separate occasions with the Mayor of Summerville and the Developer in groups of two. Prior to those gatherings, the Board Secretary wrote in an email to Board members:

> The Mayor would like to get your input and thoughts on this project while still in the very early stages of design. His thought is to meet you at his home . . . in a casual setting, two board members at a time for approximately 30 minutes (no possibility of it looking like a quorum).

The gatherings at the Mayor's house were not open to the public, and the Board did not keep minutes of the gatherings.

On October 6 and November 3, 2014, the Board held publicly-noticed meetings and discussed the Project. Minutes were kept, and the Board took public comment during the meetings. The Board did not vote on the Project at either meeting.

On December 12, 2014, six Board members met with the Developer in pre-arranged groups of three on two separate occasions. The Board Secretary wrote in an email to Board members:

> To avoid any possibility of a quorum (as this is not a public meeting), please stay within your agreed time frame. Please remember this is a workshop to give you an opportunity to review plans and discuss concerns from prior meetings.

These two gatherings were not open to the public, and the Board did not keep minutes of the gatherings.

On January 5, 2015, the Board held a publicly-noticed meeting and discussed the Project. Minutes were kept. The meeting was held in the Town Hall Annex training room, while the other public meetings about the Project were held in the Town Hall Annex council chambers. According to a letter written by an attendee of the meeting, "there were far too few seats to accommodate the number of people crowded into the [training room]." The Board Chairman opened the meeting by stating "we usually choose to allow others to express comments that might help influence our decision making," and asked the attendees to limit their comments to

---

[2] One Board member recused himself from all Board discussion of the Project due to a conflict of interest. Accordingly, only six Board members considered, and ultimately voted on, the Project.

three minutes. However, the Board did not take public comment during the meeting. The Board granted the Project "conceptual and preliminary approval" during the meeting. The Board also approved demolition of a gas station, contingent upon the Project receiving final approval.

On January 12, 2015, the Board held a publicly-noticed meeting to discuss the Project's demolition needs. Minutes were kept. The Board did not take public comment during the meeting. The Board voted to allow demolition of several buildings, contingent upon the Project receiving final approval.

On April 6 and May 11, 2015, the Board held publicly-noticed meetings and discussed the Project. Minutes were kept, and the Board took public comment during both meetings. During the April 6 meeting, the Board granted the Project "conditional final approval." During the May 11 meeting, the Board granted the Project final approval.

Petitioners timely appealed the Board's April 6 and May 11 decisions to the circuit court, seeking a reversal of the Board's approval of the Project.[3] Petitioners claimed the Board violated FOIA and applicable Summerville ordinances throughout its review of the Project. Petitioners did not seek to enjoin the Developer from constructing the Project while Petitioners' appeal was pending. By order dated September 24, 2015, the circuit court affirmed the Board's approval of the Project. Petitioners timely appealed to the court of appeals. The court of appeals affirmed the circuit court and upheld the Board's approval of the Project. *Croft v. Town of Summerville*, 428 S.C. 576, 837 S.E.2d 219 (Ct. App. 2019). This Court granted Petitioners a writ of certiorari to review the court of appeals' decision.

## Discussion

Petitioners ask this Court to reverse the court of appeals and invalidate the Board's approval of the Project. Petitioners allege the Board violated several FOIA provisions and Summerville's ordinances during the Board's review of the Project. For example, Petitioners contend the gatherings of small groups of Board members with the Developer in July and December 2014 were "meetings" of "committees" of the Board required to be open to the public. *See* S.C. Code Ann. §§ 30-4-20(a), (d), (e), -60. Petitioners claim the Board also violated FOIA by holding the January 5, 2015 meeting in a room that was too small to allow public participation. Petitioners also argue the Board violated a Summerville ordinance by failing to give the public the opportunity to comment during the January 5 and January 12, 2015 public

---

[3] The appeals were consolidated by consent of the parties.

meetings during which the Board considered the Developer's application to demolish structures.  *See* Summerville, S.C., Code of Ordinances § 32-182(b).

Again, Petitioners contend the only appropriate remedy for these alleged violations is invalidation of the Board's approval of the Project.  Granting such relief would prohibit the Developer from moving forward with the Project and would require the Developer to obtain new Board approval before any construction could begin.

## A.  Mootness

During oral argument, members of the Court asked counsel for Petitioners and Respondents about the current status of the Project.  Petitioners' counsel responded, "my understanding is that the Project is not going forward," and explained he believed the Developer made the "economic decision" to abandon the Project.  Respondents' counsel provided the same information to the Court.  Counsel explained the Developer abandoned the Project when the Town committed what the Developer thought was an insufficient amount of funding for the public improvement portion of the Project.  During oral argument, counsel for both Petitioners and Respondents acknowledged the Developer's abandonment of the Project likely rendered Petitioners' appeal moot.

"Generally, this Court only considers cases presenting a justiciable controversy."  *Sloan v. Friends of the Hunley, Inc.*, 369 S.C. 20, 25, 630 S.E.2d 474, 477 (2006).  "An appellate court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy."  *Curtis v. State*, 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001).  "A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court."  *Sloan*, 369 S.C. at 26, 630 S.E.2d at 477.

Counsel for Petitioners and Respondents are correct this appeal is now moot.  In their brief, Petitioners ask the Court "to invalidate the [Board] approvals of the Project and . . . require the [Developer] to obtain new approvals following lawful procedures."  Respondents ask the Court to affirm the Board's approval of the Project.  At its core, the fight in this case is over whether the Developer can build the Project as currently approved by the Board, or whether the Developer must return to the Board and obtain new approval before building the Project.  This controversy ended when the Developer decided not to build the Project.  A decision rendered for either party would not provide any practical relief and would be a purely academic exercise by this Court.

## B. Exceptions to Mootness

Petitioners request the Court to consider two exceptions to the mootness doctrine. First, they urge the Court to decide the merits of the appeal because the issues at play are capable of repetition, yet evade review. This Court has recognized this exception to the mootness doctrine. *See, e.g.*, *Byrd v. Irmo High School*, 321 S.C. 426, 431-32, 468 S.E.2d 861, 864 (1996). However, for the exception to apply, "the action must be one which will truly evade review." *Sloan*, 369 S.C. at 27, 630 S.E.2d at 478. The exception is most applicable in situations where the prejudice suffered by the complaining party is temporary and has ended by the time of appellate review. *See Byrd*, 321 S.C. at 432, 468 S.E.2d at 864 (finding short-term student suspensions evade review because they are, "by their very nature, completed long before an appellate court can review the issues they implicate"). Even if the issues related to alleged FOIA and ordinance violations by the Board are capable of repetition, they do not evade review. Here, Petitioners' appeal became moot because the Developer decided to abandon the Project, not because Petitioners had insufficient time to challenge the Board's approval before the controversy ended.

Petitioners also ask this Court to decide the merits of the appeal under the public interest exception to the mootness doctrine. An appellate court may address an issue despite its mootness "when the question considers matters of important public interest." *Sloan*, 369 S.C. at 26-27, 630 S.E.2d at 478. For this exception to apply, "the issue must present a question of imperative and manifest urgency requiring the establishment of a rule for future guidance in 'matters of important public interest.'" *Id.* at 27, 630 S.E.2d at 478 (quoting *Sloan v. Greenville Cty.*, 361 S.C. 568, 570, 606 S.E.2d 464, 465-66 (2004)). We agree it is "important" that citizens have the ability to stay informed of the activities of public bodies. *See* S.C. Code Ann. § 30-4-15 ("The General Assembly finds that it is vital in a democratic society that public business be performed in an open and public manner so that citizens shall be advised of the performance of public officials and of the decisions that are reached in public activity and in the formulation of public policy."). However, we hold the public importance exception does not apply in this case because there exists no imperative or manifest urgency requiring this Court to issue an opinion on the application of FOIA and Summerville's ordinances to the Board's activity. We therefore refuse to apply the public importance exception.

## Conclusion

For the foregoing reasons, we vacate the court of appeals' decision and dismiss this appeal as moot.

**VACATED.**

**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.**